Phillip Wm. Lear
Lear & Lear PLLC
808 E South Temple Street
Salt Lake City, UT 84102
Telephone:  (801) 538-5000
Facsimile:(801) 538-5001
Email:  phillip.lear@learlaw.com
Local Attorney for Linda P. Smith

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION


LINDA P. SMITH,

    *Plaintiff*

    v.

XAVIER BECERRA, in his capacity
as the Secretary of the United States
Department of Health and Human
Services,

    *Defendant*

Case No. 1:21-cv-00047-HCN-DBP

PLAINTIFF'S REPLY IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT BASED ON
COLLATERAL
ESTOPPEL/OPPOSITION TO
CROSS-MOTION

JURY TRIAL DEMANDED

Judge Howard Nielson, Jr.
Magistrate Judge Dustin B. Pead

Mrs. Smith's motion should be granted. This Court should determine that the Secretary is barred by collateral estoppel from rejecting Mrs. Smith's claims for CGM (and supplies) coverage. The Secretary's opposition makes little/no effort to carry the Secretary's burden to show through statutes passed by Congress that Congress intended to abrogate the common law of collateral estoppel and rebut the presumption that collateral estoppel applies to Medicare cases. Thus, that collateral estoppel applies to Medicare cases is established.

The Secretary's arguments that Mrs. Smith *waived* collateral estoppel and that the Secretary is not a party to proceedings conducted by his own ALJs fare no better. Mrs. Smith's motion should be granted.

## I.      DISCUSSION

## A.      Reply Re: Statement of Undisputed Material Facts

The Secretary did not attempt to rebut the facts set forth in Plaintiff's motion. Where the Secretary did include them in his papers, the Secretary did so simply to contend, falsely, that they were not facts. Thus, for example, when Mrs. Smith stated that ALJ Lambert determined that Mrs. Smith's CGM (and supplies) were "durable medical equipment" (Mot. at 6-7 *citing, e.g.*, AR1411),[1] the Secretary contended that was a legal conclusion as opposed to a factual assertion of the contents of ALJ

---

[1] *See* AR1411 ("Thus, the Appellant's continuous glucose monitor meets the definition of durable medical equipment set forth in 42 C.F.R. § 414.202."))

Lambert's decision.  Opp. at 8-9.  The Secretary's contentions in this regard are baseless.

Moreover, as set forth in Plaintiff's motion, the relevant statements in the Complaint and in the Statement of Undisputed Material Facts should be deemed admitted.  Mot. at 6-10.  Further, of course, the Secretary did not offer any facts to demonstrate that there was a genuine issue of material fact for each assertion by Mrs. Smith.

**B.   Response to Secretary's Statement of Undisputed Material Facts**

1.     Mrs. Smith did not argue to the to the Medicare Appeals Council that the decision in ALJ Appeal No. 1-6020086584R1 should have issue preclusive effect

Response:  Denied.  Before both ALJ Win and the Medicare Appeals Council (MAC), Mrs. Smith argued the idea of collateral estoppel more generally, cited *Astoria* for the proposition that collateral estoppel may be based on prior agency determinations, and submitted ALJ Lambert's decision. *See, e.g.,* AR13-14; AR121-22; AR1405-12; AR10288.  Further, the MAC had before it the entire record of the case, including Mrs. Smith's briefing and arguments below. *See* AR3 ("We have carefully considered the request for review, as well as the administrative records.").  Indeed, ALJ Win stated that he had reviewed the ALJ decisions, including ALJ Lambert's decision.  AR32.

Nevertheless, it is fair to say that given the Secretary's past practice of disputing the very idea of collateral estoppel, Mrs. Smith sought to emphasize that there were prior district court decisions, not just ALJ decisions.  In any event, the MAC rejected the idea that collateral estoppel could ever apply against the Secretary, while ALJ Win held that he was bound by CMS 1682-R.  *See* AR7; AR32.

2.      Neither the Secretary nor CMS participated as a party in ALJ Appeal No. 1-60200865841.

Response:  Denied, depending on what meaning is ascribed to "party" and "participate."  The Secretary is always a "party" to proceedings before his ALJs and in that sense always "participates" in the proceedings.  That said, it is not disputed that the Secretary did not elect to attend the hearing before ALJ Lambert and take advantage of his rights under 42 C.F.R. §§ 405. 1008 and 405.1910 and instead chose to rely on his earlier denials and placing the burden of proof on Mrs. Smith.

## C.    The Secretary's Arguments

### 1.    Mrs. Smith Did Not Waive Collateral Estoppel

The Secretary contends that Mrs. Smith waived collateral estoppel by not raising it below (or at least not referencing ALJ Lambert's decision below).  Opp. at 11-12.  This Court need not even examine the Record in order to reject that argument.  Pursuant to FED.R.CIV.P. 8(c)(1), waiver is an affirmative defense that the Secretary bore the burden of pleading.  "Failure to plead an affirmative defense results in a

waiver of that defense." *See, e.g., Bentley v. Cleveland County Board of County Comm.*, 41 F.3d 600, 604 (10ᵗʰ Cir. 1994).   In the present case, neither of the "Answers" pled waiver.  *See* Dkt #24 and 30.  Accordingly, the Secretary waived any waiver defense.

Nevertheless, Mrs. Smith argued collateral estoppel throughout the proceedings below.  Before ALJ Win, Mrs. Smith submitted ALJ Lambert's decision (as well as the district court decisions) and, relying on the Supreme Court's decision in *Astoria*, argued collateral estoppel.  *See* AR121-22; AR1405-12; AR10288 ("Again, our base position is collateral estoppel.").  Thereafter, ALJ Win issued a decision stating that all the exhibits (including ALJ Lambert's prior decision) were admitted and that ALJ Win had reviewed the prior ALJ decisions.  *See* AR32 ("In issuing this decision, the ALJ has review all medical documentation, literature, testimony, *previous ALJ decisions*, and pre-hearing briefs in the record") (emphasis added).  Nevertheless, ALJ Win held that he was not bound by even prior district court decisions but was bound by CMS 1682-R, which post-dated the earlier decisions.  *See* AR32.

Again, at the MAC, Mrs. Smith argued collateral estoppel citing and quoting from *Astoria*.  *See* AR13-14.  In rejecting Mrs. Smith's appeal, the MAC stated:

> Collateral estoppel is an affirmative defense generally pleading by defendants in civil actions, and is not applicable in administrative appeals, as in the case here.  More importantly, under Medicare regulations, both ALJs and Council conduct *de novo* hearings and are

4

required to hold *de novo* considerations of the facts and laws. Therefore, *prior ALJ decisions*, and non-precedential Council *and district court decisions are not binding on any* subsequent decision issued by an ALJ or the Council.

*See* AR7 (emphasis added).  Accordingly, with ALJ Lambert's decision before it, the MAC rejected the holding of *Astoria* and the idea that collateral estoppel (whether mutual or nonmutual, whether based on ALJ or district court decisions) could ever apply.  Mrs. Smith did not waive collateral estoppel.

However considered, collateral estoppel is properly before this Court because the Secretary waived any argument of waiver by failing to assert it in multiple "Answers" and/or Mrs. Smith actually argued it below.

### 2.    Collateral Estoppel Applies to Medicare Cases

Aa Mrs. Smith noted in her moving papers, there is a presumption that the common law doctrine of collateral estoppel applies when an agency is acting in a judicial capacity and the Secretary bore the burden of rebutting the presumption. Moreover, the presumption can only be overcome by pointing to *statutes passed by Congress* which reflect a congressional intent to abrogate the common law doctrine of collateral estoppel.  Further, to do so, a statute must "speak directly" to the common law issue and statutes which are compatible with the pre-existing practice of the common law do not overcome the presumption.  Mot. at 12-13.

### a.    The Presumption Is Not Overcome By *De Novo* Review

The Secretary contends that *de novo* review of ALJ decisions by the MAC, pursuant to 42 U.S.C. § 1395ff(d)(2)(B), is inconsistent with collateral estoppel and thereby reflect congressional intent to abrogate collateral estoppel.  *Id*. at 10-11. That statute provides:

> DAB[2] hearing procedure
>> In reviewing a decision on a hearing under this paragraph [*i.e.*, an ALJ decision], the Departmental Appeals Board shall review the case de novo.

On its face, the statute merely describes the common situation where a matter is considered *de novo* on appellate review.  Such review does not mean without regard to legal principles.  Instead, it means that the matter is reviewed with no deference to the conclusions of the tribunal being reviewed.  Of course, collateral estoppel is based on some prior, final decision and its impact on a subsequent, separate proceeding that is now being reviewed.

Multiple statutes contain *de novo* review provisions, yet issue preclusion (*i.e.*, collateral estoppel) and claim preclusion can still apply in those proceedings where there is an earlier litigation.  For example, 8 U.S.C. § 1421(c) provides for district court "*de novo* review" of naturalization decisions.  As cogently explained by one Court:

> [T]he *de novo* review requirement of § 1421(c) means only that the court should not defer to USCIS with respect to finding and conclusions

---

[2] The Departmental Appeals Board (DAB) is a larger entity within which resides the Medicare Appeals Council (MAC) also referred to as "the Council."

regarding the naturalization proceeding being review and that it does *not* mean that other decisions by courts or agencies cannot have preclusive effect.

\* \* \*

The most natural reading of [*U.S. v. Hovsepian*, 359 F.3d 1144, 1162 (9th Cir. 2004)] is that the power to conduct de novo review under § 1421(c) requires that the district court make its own findings of fact and conclusions of law as to whether petitioner qualifies for naturalization and should not defer to finding of fact and conclusions of law made by USCIS *in the underlying naturalization proceeding*. While Defendants propose a broader reading of *Hovsepian* that would preclude the Court from relying on *any* prior findings of fact or conclusions of law by USCIS, even in separate proceedings, the Court finds no support for such a broad reading of the case, which did not address collateral estoppel at all.

*Ahmad v. Johnson*, No. 16-CV-01776-JCS, 2017 WL 6945395, at \*9-10 (N.D. Cal. Oct. 10, 2017) (emphasis in original) (while collateral estoppel could apply, not found because "actually litigated" element not present).

Likewise, 8 U.S.C. § 1503 (proceedings to determine citizenship) has been interpreted to provide for *de novo* review by district courts. Nevertheless, collateral estoppel has been applied to bar re-litigation of underlying facts determined in an earlier proceeding. *See Ortega v. Holder*, No. 08 C 1121, 2010 WL 4625580 (N.D. Ill. Nov. 5, 2010) (Attorney General collaterally estopped from denying facts which supported citizenship determined in earlier removal proceedings).

Likewise, 41 U.S.C. § 7104(b) provides for *de novo* judicial review of certain actions related to contracts involving the United States. 41 U.S.C. § 7104(b)(4) ("an action shall proceed de novo"). Nevertheless, in *Sikorsky Aircraft Corp. v. U.S.*, 122

7

Fed. Cl. 711 (2015), the government was precluded from litigating whether certain accounting practices violated regulations by an earlier action regarding the same matter. *See also B & B Hardware*, 575 U.S. at 152 ("Ordinary preclusion law teaches that if a party to a court proceeding does not challenge an adverse decision, that decision can have preclusive effect in other cases, even if it would have been reviewed *de novo*.").

Indeed, motions granting summary judgment are reviewed by appeals courts *de novo,* as are District Court rulings on issue preclusion. *See, e.g., Salguero v. City of Clovis*, 366 F.3d 1168, 1172 (10th Cir. 2004). Thus, if *de novo* review were inconsistent with collateral estoppel, collateral estoppel could never apply. Obviously, that is erroneous.

Applying the Supreme Court's standards, § 1395ff(d)(2)(B)'s "*de novo* review" does not "speak directly" to the issue of collateral estoppel (*Texas*, 507 U.S. at 534) or reflect that a "statutory purpose to the contrary is evident." *Astoria*, 501 U.S. at 108. Further, like *de novo* review of the application of collateral estoppel on appeal in Circuit Courts, *de novo* Council review is compatible with the pre-existing practice of collateral estoppel, meaning the presumption is not overcome. *BFP*, 511 U.S. at 543 (phrase "compatible with pre-existing practice" not sufficient to overcome presumption).

The Secretary's effort to rely on *Christenson v. Azar*, 2020 WL 3642315 (E.D. Wisc. July 6, 2020) and *Banks v. Azar*, 2021 WL 1759304 (N.D. Ala. Mar. 30, 2021) is misplaced.  Opp. at 12-15.  The decision in *Christenson* was vacated as Mr. Christenson passed away before the litigation could be completed and his co-plaintiff (Mrs. Prosser) was held to lack standing.  *See Prosser v. Becerra*, 2 F.4d 708 (7th Cir. 2021).  Likewise, in *Banks*, the district court's decision was vacated and the matter remanded by the Circuit Court for further proceedings.  *See Banks v. Secretary of Health and Human Services*, 2021 Wl 3138562 (11th Cir. July 26, 2021).  Unreviewed, vacated decisions are less than persuasive.  In any event, neither of those courts conducted the analysis required by the Supreme Court's precedents.

Likewise inapposite is the Secretary's citation to *Porzecanski v. Azar*, 943 F.3d 472 (D.C. Cir. 2010) and *W. Texas LTS Partners, Inc. v. Dept' of H.H.S.*, 843 F.3d 1043, 1046 (5th Cir. 2016), neither of which involve collateral estoppel, and particularly mutual collateral estoppel, as is present in this case.  Opp. at 14.

The Secretary failed to carry his burden.

### b.     The Secretary Cannot Bootstrap Abrogation of Collateral Estoppel Through His Own Regulations

Of course, Congress' intent is expressed in its own statutes and *not* in regulations enacted by administrative agencies of the Executive Branch.  *Scalia & Garner*, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 397 (2012) ("'The sovereign will is made known to us by legislative enactment.'  And it is made known in no other way.") (*citing Wheeler v. Smith*, 50 U.S. (9 How.) 55, 78 (1850)).  Mere regulations only reflect the Secretary's will and not Congress'.  Thus, the Secretary's effort to rely on his own regulations confirms the absence of statutory support for abrogation.

While only Congress can abrogate the common law of collateral estoppel through its statutes, the Secretary argues that he has usurped that power and created regulations that bar collateral estoppel (unless the Secretary chooses otherwise).  Opp. at 12-15.  Congress did not grant the Secretary such power and, if Congress attempted to, that would be unconstitutional.  Moreover, the Secretary's arguments based on his own regulations are non-sensical.

### i.     Only Congress Can Abrogate the Common Law

The Secretary appears to contend that his regulatory powers allow him to abrogate the common law.  Opp. at 13-15.  That is simply wrong.  Title 42 U.S.C §1395ff(a)(1) provides, in relevant part:

> The Secretary shall promulgate regulations and make initial determinations with respect to benefits under part A or part B in accordance with those regulations for the following: …

Title 42 U.S.C §1395hh(a)(1) provides, in relevant part:

> The Secretary shall prescribe such regulations as may be necessary to carry out the administration of the insurance programs under this subchapter. When used in this subchapter, the term "regulations" means, unless the context otherwise requires, regulations prescribed by the Secretary.

These provisions are consistent with collateral estoppel and do not delegate the power to abrogate the common law to the Secretary.

Applying the Supreme Court's standard, 42 U.S.C. §§ 1395ff(a)(1) and 1395hh(a)(1) show no congressional intent to abrogate the common law doctrine of collateral estoppel. *First,* the statutes do not "speak directly" to the common law or collateral estoppel. *Texas*, 507 U.S. at 534. *Second*, the statutes do not "clearly express a congressional intent" to abrogate the common law or collateral estoppel. *See Astoria*, 501 U.S. at 109-110. *Third*, the statutes' text is compatible with the preexisting practice of collateral estoppel. *BFP*, 511 U.S. at 543. Accordingly, the presumption is not overcome and the common law of collateral estoppel applies to Medicare cases.

Further, to the extent that the Secretary contends that these statutes should be read as transferring the power to abrogate the common law to the Secretary, such a reading violates standards of statutory construction and would pose a broad (and

11

dangerous) threat to separation of powers and the common law. Canons of statutory construction dictate that the Court should not adopt constructions that raise serious constitutional concerns. *See Gomez v. U.S.*, 490 U.S. 858, 864 (1989) ("It is our settled policy to avoid interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question."); *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909) ("[W]here a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter.").

The "common law" (of which collateral estoppel is only one, albeit vital, piece) is vast. The Supreme Court has explained:

> As distinguished from law created by the enactment of legislatures, the common law comprises the body of those principles and rules of action relating to the government and security of persons and property, which derive their authority solely from usages and customs of immemorial antiquity, or from the judgments and decrees of the courts recognizing, affirming, and enforcing such usages and customs; and, in this sense, particularly the ancient unwritten law of England.

*See Western Union Telegraph Co. v. Call Publishing Co.*, 181 U.S. 92, 102 (1901) (cleaned up). When Congress legislates, it does so with the presumption that the common law applies.

If it is contended that a grant of regulatory authority implicitly includes the power to abrogate the common law, that would have grave implications and indicate

a vast, heretofore unknown, transfer of power from the Congress to the Executive branch. *See, e.g., Whitman v. American Trucking Assoc., Inc.*, 531 U.S. 457, 468 (2001) ("Congress, we have held, … does not, one might say, hide elephants in mouseholes.") (cleaned up). Specifically, the phrases "shall promulgate such regulations as" and "shall prescribe such regulations as may be necessary" are common phrases used by Congress to vest regulatory authority. The phrase "shall promulgate such regulations as" appears more than 60 times in more than 20 Titles of the United States Code. Likewise, the phrase "shall prescribe such regulations" is used more than 200 times in 20 Titles of the United States Code.[3] Thus, if these phrases were construed to convey the power to abrogate the common law, executive agencies from the Treasury Department[4] to the Department of Agriculture[5] would have unilateral power to abrogate the entirety of Anglo-American common law. That is contrary to the Constitution.

The Constitution provides that: "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const. art. I, § 1. From this

---

[3] Combined, these phrases appear in Titles 2, 5-8, 10, 12, 15-16, 19-23, 25-26, 28-29, 33, 37-38, 41-43, and 49-51 of the United States Code.

[4] *See* 19 U.S.C. § 4535(a) ("The Secretary of the Treasury shall prescribe such regulations as may be necessary to carry out this title and the amendments made by this title (except as provided by subsection (b))").

[5] *See* 16 U.S.C. § 3473 ("The Secretary of Agriculture shall prescribe such regulations as may be necessary to carry out the provisions of this chapter.").

language and first principles of separation of powers, the Supreme Court has announced a nondelegation principle: "Congress may not constitutionally delegate its legislative power to another branch of Government." *Touby v. U.S.*, 500 U.S. 160, 165 (1991). Accordingly, when "Congress confers decision making authority upon agencies, Congress must 'lay down by legislative act an intelligible principle to which the person or body authorized to act is directed to conform." *Whitman v. Am. Trucking Ass'n, Inc.*, 531 U.S. 457, 472 (2001) (citation omitted)).

Here, there is no intelligible principle to which the Secretary must conform. Of course, the statutes say nothing about collateral estoppel and a construction based on implicit delegation is not so limited. Indeed, although this case concerns collateral estoppel, under an implicit delegation theory, the Secretary could arbitrarily abrogate any other common law principle. For example, numerous procedural powers of federal courts (contempt, remittitur, preclusion, etc.) derive solely from the common law. *See Amy Coney Barrett*, PROCEDURAL COMMON LAW, 94 Va. L. Rev. 813 (2008). Thus, the Secretary could abrogate such powers and prevent a federal court from exercising them. This would raise grave Constitutional concerns. Accordingly, applying the Supreme Court's precedents, these statutes should not be construed as attempting to convey the power to abrogate the common law. Alternatively, if these statutes are read to attempt to convey the power to

14

abrogate the common law, then the statutes are unconstitutional because they attempt to convey Congress' Article I legislative power to another branch.

### ii. The Secretary's Arguments Based on his Own Regulations Are Non-Sensical

Respectfully, it is very difficult to follow the Secretary's claims regarding decisions he chooses to designate "precedential", collateral estoppel, and how any of this makes sense given the Secretary's argument that the statutory mandate of *de novo* review precludes collateral estoppel.  Opp. at 12-15.

First, "precedent/precedential" and collateral estoppel are distinct legal concepts and decisions that have collateral estoppel effect may, or may not, have precedential effect/value.  Likewise, decisions that have precedential effect/value may or may not give rise to collateral estoppel.  Indeed, prior to the 2006 amendments to FEDERAL RULE OF APPELLATE PROCEDURE 32.1, Tenth Circuit FRAP 32.1 explicitly drew a distinction between citing "precedential"/"non-precedential" decisions and citing decisions for the purposes of collateral estoppel.  *Id.* ("Unpublished decisions are not precedential, but may be cited for their persuasive value. They may also be cited under the doctrines of law of the case, claim preclusion, and issue preclusion.").  Thus, "precedential" and collateral estoppel simply have nothing to do with each other.

Second, Congress enacted the basic statutory scheme of multi-level appeals within the agency (including ALJ's, *de novo* review by the MAC, etc.) in 2000.  *See*

42 U.S.C. § 1395ff; Pub. L. 106–554, § 1(a)(6) [title V, §§ 521(a), 522(a)], Dec. 21, 2000.  By contrast, the Secretary promulgated 42 C.F.R. § 401.109-providing for "precedential" opinions in 2017.  *See* 82 FED.REG. 4974, 4977-4981, 5105-5106 (Jan. 17, 2017).  Obviously, an agency's regulation adopted 17 years after Congress passed a statute cannot demonstrate Congress' intent years before.

Third, as posited by the Secretary, in combination, paragraphs (a) and (b) of 42 C.F.R. § 401.109 embody the traditional concept of collateral estoppel.  That is, while paragraph (d)(1) states that legal analysis and interpretation are binding, regardless of the parties, paragraph (d)(2) specifies that factual findings are binding in future cases involving the same parties absent what is effectively "changed circumstances."  Thus, even under the regulation, a decision designated "precedential" by the Secretary would have collateral estoppel effect.  Accordingly, the Secretary's argument in this regard rebuts his simultaneous, but mutually exclusive, contention that collateral estoppel is barred by the *de novo* review provisions of the Medicare Act.

The Secretary closes the collateral estoppel portion of his brief with the suggestion that a decision in Mrs. Smith's favor would mean that collateral estoppel in Medicare cases would turn on whether the beneficiary was represented, as a result of the Secretary's regulations.  Opp. at 16.  Of course, this policy argument does not address the base issue of whether Congress passed statutes clearly expressing

Congress' intent to abrogate the common law.  Moreover, while it is highly doubtful that the Secretary could so hamper his own ability to participate (while continuing to place the burden of proof on beneficiaries) that collateral estoppel would be foreclosed, this Court need not reach that issue.  In the present case, because Mrs. Smith was represented, under the Secretary's own regulations, the Secretary had all the rights/opportunities of a litigant - even if the Secretary chose not to take advantage of them.

The Secretary failed to carry his burden and collateral estoppel applies to Medicare cases.

### 3.     The Elements of Collateral Estoppel Are Present in this Case

The Secretary did not contest that all the elements of collateral estoppel are present except: 1) his contention that the Secretary was not a party to "party" to the proceedings conducted before his own ALJs and against the Secretary as a result of the actions of the Secretary's agents; and 2) that the Secretary did not have a "full and fair opportunity to litigate" because the Secretary lacked an "incentive to litigate because he erroneously concluded that collateral estoppel would not apply.  Opp. at 15-16.

With respect to whether the Secretary was a "party" to the proceedings before ALJ Lambert, the Secretary asserts that there "was only one party" – Mrs. Smith. Opp. at 15.  That contention is disproved by the caption of this case – Smith *v.*

17

*Becerra*.  Throughout the processing of Mrs. Smith's claims, the Secretary's agents denied her claims and Mrs. Smith litigated those denials against the Secretary up to and including the proceedings before ALJ Lambert.  Throughout, Mrs. Smith bore the burden of proof.  Before ALJ Lambert (as before ALJ Win), the Secretary chose to rely on the fact that Mrs. Smith bore the burden of proof and not attend.  That the Secretary chose not to attend did not make him any less of a party to the proceedings, the proceedings any less adversarial, or this case a default.[6]  *See, e.g., Matter of Garner*, 56 F.3d 677, 680 (5th Cir. 1996) (defendant who answered Complaint but did not otherwise appear, bound by collateral estoppel because plaintiff put to burden of proof).

Moreover, the Secretary's effort to rely on his own regulations and their use of the term "party" (*see* 42 C.F.R. 405. 1012(a)(1)) is simply a variant on the Secretary's assertion that he can defy Congress' will with respect to the common law through his regulatory powers.  The Secretary's adoption of a regulation stating that that he is not a "party" (unless he unilaterally chooses otherwise) does not make it so.[7]  Indeed, in this regard, the Secretary seeks to contradict the RESTATEMENT OF

---

[6] This is akin to a criminal prosecution where the defendant pleads not guilty but otherwise refuses/declines to participate in the proceedings.

[7] Indeed, allowing the Secretary to decide when he was a "party" would empower the Secretary to decide when collateral estoppel applies and result in the unfairness and burden on beneficiaries collateral estoppel exists to prevent.

JUDGMENTS on which the Supreme Court has relied in matters relating to collateral estoppel.  *See* RESTATEMENT (SECOND) OF JUDGMENTS (1982) § 83(1):

> Except as stated in subsections (2), (3), and (4), a valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court.

There is no merit to the claim that the Secretary was not a "party"

Though the Secretary could have conducted discovery, called witnesses, cross-examined, etc., the Secretary contends that he did not have a "full and fair opportunity to litigate."  Opp. at 16.  This is so, the Secretary contends, because he lacked incentive to litigate before ALJ Lambert because he incorrectly concluded that collateral estoppel could not apply.  This conflates two distinct concepts.  "Full and fair opportunity" is an element of collateral estoppel itself and focuses on whether the party to be bound had a fair opportunity to litigate.  Here, given Mrs. Smith's representation and the Secretary's own regulations, there can be little doubt that the Secretary had a full and fair *opportunity* to litigate.

By contrast, "lack of incentive to litigate" is an exception to collateral estoppel that applies even when all the elements of collateral estoppel are present.  *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 330 (1979); *B & B Hardware, Inc. v. Hargis, Industries, Inc.*, 575 U.S. 148, 158 (2015) ("amount in controversy in the first action was so small in relation to the amount in controversy in the second").  Here, the Secretary made no effort to establish that the amount in controversy in the

19

proceedings before ALJ Lambert were materially different than those involved in the proceedings before ALJ Win at issue in this case.  Indeed, the amounts are not materially different and the Secretary had the same incentive to litigate before ALJ Lambert as he does in this case.  The Secretary had a "full and fair opportunity to litigate" (even though he chose not to take advantage of it).  That the Secretary adopted a flawed legal position is not a reason that Mrs. Smith (and the judiciary) should suffer the expense (and inconsistency) of relitigating a matter the Secretary already lost after a fair opportunity to dispute.

Accordingly, all the elements of collateral estoppel are present and the Secretary is collaterally estopped from denying Mrs. Smith's claims.

## II.   CONCLUSION

For the reasons set forth above, this Court should hold that the Secretary is collaterally estopped from denying Mrs. Smith's claims and, pursuant to 42 U.S.C. § 405(g) (fourth sentence) should remand this matter to the Secretary with instructions to provide coverage.

Dated:  October 5, 2021                    Respectfully submitted,

                                           PARRISH LAW OFFICES


                                           /s/  James C. Pistorino_____
                                           James C. Pistorino
                                           *Attorneys for Plaintiffs*

LEAR & LEAR PLLC


*/s/ Phillip Wm. Lear*
Phillip Wm. Lear
*Attorneys for Plaintiff*