Phillip Wm. Lear
Lear & Lear PLLC
808 E South Temple Street
Salt Lake City, UT 84102
Telephone: (801) 538-5000
Facsimile:(801) 538-5001
Email: phillip.lear@learlaw.com
Local Attorney for Linda P. Smith

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| LINDA P. SMITH,<br><br>*Plaintiff*<br><br>v.<br><br>XAVIER BECERRA, in his capacity as the Secretary of the United States Department of Health and Human Services,<br><br>*Defendant* | Case No. 1:21-cv-00047-HCN-DBP<br><br>LINDA SMITH'S MOTION TO FOR ATTORNEYS FEES AND EXPENSES PURSUANT TO THE EQUAL ACCES TO JUSTICE ACT<br><br>Judge Howard Nielson, Jr.<br>Magistrate Judge Dustin B. Pead |

Pursuant to DUCivR 54-2 and 28 U.S.C. § 2412, Plaintiff Linda Smith files this motion for attorneys fees and expenses. Mrs. Smith was the "prevailing party", the Secretary's position both in the Department and in this Court was in bad faith and/or lacked "substantial justification." Mrs. Smith should be awarded her reasonable attorneys fees and expenses in the amount of $84,980 and $402, respectively.

## PROCEDURAL BACKGROUND

The claims-in-suit were denied initially, on redetermination, on reconsideration, by the ALJ, and by the Medicare Appeals Council (MAC) on the grounds that a CGM is not "primarily and customarily used to serve a medical purpose" as construed in CMS 1682-R (which Mrs. Smith also contends issued illegally). *See, e.g.*, AR3-11.

### Procedure Before this Court

Mrs. Smith filed this case on April 5, 2021. *See* Dkt. #1. As set forth in the Complaint, Mrs. Smith alleged that the Secretary issued CMS-1682-R illegally in violation of 42 U.S.C. § 1395hh. *See* Dkt. #1, ¶¶ 28-38. In addition, Count III alleges that the denials in this case were made without observance of the procedure required by law, referencing the notice and comment allegations. *Id.* at ¶¶ 103-105. Finally, the Prayer for Relief asks the Court to set aside CMS 1682-R. *Id.* at 22. The

Prayer also asks the Court to find that CGMs are "durable medical equipment" within the meaning of the appropriate statute and regulations. *Id.*

Thereafter, the Secretary filed a "Response", which did not respond to the allegations of the Complaint. *See* Dkt. #10. Instead, the "Response" offered to pay one of the three claims at issue and requested that the others be remanded so that the Secretary could consider different grounds to reject them. *Id.* Thereafter, this Court ordered the Secretary to file an Answer.

On August 24, 2021, the Secretary filed an "Answer" that Plaintiff contends was filed in violation of FED.R.CIV.P. 11 and was filed for the improper purpose of concealing the Secretary's positions until after Mrs. Smith filed motions for summary judgment. *See* Dkt. #24.

Mrs. Smith filed motions for summary judgment on September 7, 2021. *See* Dkt. #28 and 29. The improper purpose achieved, the Secretary promptly filed a new "Answer." *See* Dkt. #30. The new "Answer" denied the allegations of the Complaint and contended that Mrs. Smith was not "entitled to the requested relief or any relief whatsoever." *Id.* at 23.

On September 21, 2021, the Secretary filed two copies of a combined opposition to Mrs. Smith's two motions for summary judgment as well as cross-motion on the same. *See* Dkt. #s 31 and 32. Importantly, for these purposes, the Secretary also contended that this Court lacked the power to enjoin the Secretary's

2

conduct, even assuming it was illegal. *See* Dkt. #32 at 17 ("This Court cannot … vacate CMS 1682-R.").

On December 28, 2021, the Secretary published a notice of proposed final rule making with regard to CGM coverage. Importantly, the proposed rule was only effective for claims with dates of service after February 28, 2022, and did not apply to claims with dates of service before that date as illustrated by the fact that Mrs. Smith had another pending claim rejected on the basis of CMS 1682-R and that rejection had not been withdrawn. *See* Dkt. 54, Exhibit A.

On January 7, 2022, the Secretary filed a paper wherein the Secretary requested that the Court simply enter judgment on the three claims, without addressing the illegality of CMS 1682-R. *See* Dkt. #51. That approach allowed the Secretary to continue to engage in illegal conduct – even as to Mrs. Smith, while avoiding judicial review and/or subjecting Mrs. Smith to repeated litigation that collateral estoppel exists to avoid.

On January 19, 2021, this Court issued a docket text order requiring the Secretary to pay the three claims-at-issue but otherwise denying Mrs. Smith's requests for relief as moot and entering judgment. *See* Dkt. #52; #53.

On February 5, 2022, Mrs. Smith filed a motion to alter or amend showing that the case was not moot, especially because CMS 1682-R was then being used to

3

deny another of Mrs. Smith's claims, which the requested declaration and injunction would have precluded. *See* Dkt. #54.

On February 8, 2022, in another docket text entry, this Court denied Mrs. Smith's motion apparently adopting the Secretary's contention that the Court lacked the power to declare CMS 1682-R issued illegally and enjoin it. *See* Dkt. #55 ("[T]the court granted Plaintiff all the relief authorized by statute."). In short, relying on the Secretary's representations, this Court held that it could only "affirm, modify, or reverse" the denial of the three claims at issue (citing 42 U.S.C. § 405(g)).

Mrs. Smith estimates that during the 10 months this case was pending before this Court, more than 130,000 CGM claims (corresponding, at a minimum, to 30,000+ people) were denied on the basis of the illegally issued, bad faith CMS 1682-R.[1]

**Procedure in the *Olsen* Case**

Proceedings in the related case of *Olsen v. Becerra*, Case No. 21-cv-326 (E.D. Wisc.) are relevant. After this Court's entry of judgment on January 19, 2022, in this case, in the *Olsen* case, the Secretary was attempting to oppose a motion for a preliminary injunction seeking the same relief this Court refused to grant (*i.e.*, an injunction precluding the enforcement of CMS 1682-R). Thus, on February 5, 2022,

---

[1] This is based on production in *Lewis v. Becerra*, Case, No. 18-cv-2929 (pending in D.D.C.) (Walton, J.), which showed that ~13,000 claims/month were being denied on the basis of CMS 1682-R.

the Secretary issued what he refers to as a "Technical Direction Letter", attempting to retroactively apply the "new Rule" that would govern consideration of claims for service *after* February 28, 2022. *See Olsen*, Dkt. #20.

Olsen opposed because: 1) the TDL was not binding; 2) issued itself in violation of the notice and comment provisions, 3) violated those as well in alleged retroactive application; and 4) only contended it addressed some claims with dates of service before March 1, 2022. *See Olsen*, Dkt. #22.

Thereafter, the *Olsen* Court denied Olsen's motion for preliminary injunction on the grounds that Olsen could not show he was irreparably harmed because his then pending claims had all been paid.

**Procedure on Appeal**

Mrs. Smith filed her notice of appeal in this case on February 22, 2022. At the Tenth Circuit, Mrs. Smith argued that: 1) this Court had the power to do more than "affirm, modify, or reverse" the three claims at issue and had the power to issue the requested injunction; and 2) her claims were not moot, especially in light of the denial of her July 1, 2021 claim on the basis of CMS 1682-R.

On May 13, 2022, (*i.e.*, four days before oral argument), the Secretary issued CMS-1738, which was a new Ruling purporting to rescind CMS 1682-R and apply coverage to claims with dates of service before March 1, 2022.

5

At oral argument, with regard to the continued enforcement of CMS-1682-R, the Secretary conceded that both the "new Rule" and the TDL did not cover all prior claims or rescind CMS-1682-R but argued that CMS-1738 did. Transcript at 23:20-21:15. Also, contrary to its prior representation, the Secretary conceded that this Court had the power to issue equitable relief in the form of an injunction. Transcript at 36:3-37:10.

The Tenth Circuit issued a decision dismissing Mrs. Smith's appeal on the grounds of mootness in light of CMS-1738 issued four days before oral argument, but contending that Mrs. Smith had won all the relief she sought when the case was filed. *See Smith v. Becerra*, 44 F.4th 1238, 1250 (10th Cir. 2002).

The Tenth Circuit noted that Mrs. Smith's appeal from this court was proper/the case was not moot because Mrs. Smith retained a legally cognizable interest in the outcome of the case (and the relief sought) until the issuance of CMS-1738 four days before oral argument. *Id.* at 1248, n. 7.

**Proceedings in Other Cases**

This is not the first litigation related to CGM coverage. A timeline of proceedings in related cases is attached as Exhibit D.

### LEGAL BACKGROUND

"The clearly stated objective of the EAJA is to eliminate financial disincentives for those who would defend against unjustified governmental action

and thereby deter the unreasonable exercise of Government authority." *See Ardestani v. I.N.S.*, 502 U.S. 129, 138 (1991).

Moreover, "[t]he policy behind the EAJA is to encourage litigants to vindicate their rights where any level of the adjudicating agency has made some error in law or fact and thereby forced the litigant to seek relief from a federal court." *See Ibrahim v. D.H.S.*, 912 F.3d 1147, 1167 (9th Cir. 2019) (*en banc*).

Under EAJA, a prevailing party may obtain compensation for all aspects of the litigation, including fees incurred in litigating the fee petition. *See, e.g., I.N.S. v. Jean*, 496 U.S. 154, 162, 163 n. 10 (1990). In determining the amount of a fee, the court should determine the number of hours reasonably expended in the litigation multiplied by a reasonable hourly rate. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). As explained in *Hensley*, in cases of "exceptional success", fees in excess of those reasonably incurred may be awarded. *Id.*

"The district court may award attorney fees at market rates for the entire course of litigation, including time spent preparing, defending, and appealing the two awards of attorneys fees, if it finds that the fees incurred are in some way traceable to the government's bad faith." *Id.* at 1180 (internal citations and quotations omitted).

A "frivolous" argument is one that is "groundless" or "obviously wrong." *See Rodriguez v. U.S.*, 542 F.3d 704, 710 (9th Cir. 2008). An argument is "groundless"

7

if it is "destitute of foundation, authority, or support; having no real cause or reason; unfounded." *Id.* Moreover, "Congress specifically intended the EAJA to deter unreasonable agency conduct." *Ibrahim*, 512 F.3d at 1166-67 (*citing Jean*, 496 U.S. at 163 n. 11).

A. **Lack of "Substantial Justification" Fees**

In addition to the "bad faith" provision of EAJA, another provision allows for fees when the government's position lacks "substantial justification." *See* 24 U.S.C. § 2412(d)(1)(A). This is commonly referred to as the "substantial justification" prong.

In order to obtain fees under the paragraph (d), a party must show: 1) that the claimant is the "prevailing party"; 2) a showing that the claimant is eligible to receive an award; 3) an itemized statement containing time expended and rates charged; and 4) an allegation that the position of the United States was not substantially justified. *Scarborough v. Principi*, 541 U.S. 401, 408 (2004). As defined, the "position of the United States" includes not only the position advanced in the litigation, but also the acts or omissions by an agency giving rise to the litigation. 28 U.S.C. § 2412(d)(2)(D).

A party is the "prevailing party" if he has been "awarded some relief by the court" that amounts to a court-ordered "change in the legal relationship between the

8

parties." *See Buckhannon Board and Care Home Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 603-4 (2001).

After the movant show that it was the "prevailing party", the government bears the burden of showing that t its position was substantially justified. "Substantially justified" means "justified to a degree that could satisfy a reasonable person." *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Decisions in other cases, although not dispositive, may also shed light on the lack of justification for the government's position. "[A] string of losses can be indicative." *Id.* at 566.

## DISCUSSION

As set forth below, fees should be awarded in this case. The Secretary's position was in bad faith and market rate attorneys fees should apply. In the alternative, the Secretary's position lacked "substantial justification", a rate enhancement is appropriate, and Mrs. Smith enjoyed "exceptional success", so that, again, market rate attorneys fees should apply.

**A.   Fees Should Be Awarded Under the "Bad Faith" Provision**

As previously determined by the *Olsen* court, the Secretary's position denying Mrs. Smith's claims was asserted in "bad faith", *i.e.*, was frivolous, groundless, and utterly devoid of support. No sentient person could ever conclude that a CGM was not "primarily and customarily used to serve a medical purpose."

Through six prior litigations, the Secretary has never offered another purpose for a CGM and it is simply bad faith to contend otherwise.

Voltaire is credited with saying: "Anyone who can make you believe absurdities can make you commit atrocities." Mrs. Smith asserts that is exactly the situation in this case. The Secretary ordered his ALJs and the MAC to believe/assert the absurdity that a CGM is not "primarily and customarily used to serve a medical purpose" through CMS-1682-R, though any non-comatose person would not agree. Having been ordered to believe this absurdity, the ALJs/MAC committed an atrocity when, through July 2019, they/the Secretary denied more than 250,000 CGM claims on these grounds, thereby resulting, at a minimum, in 4-64,000 severe hypoglycemic events that could have been prevented. *See* Plaintiff's Supplemental Brief Concerning Mootness (filed in the Tenth Circuit on June 1, 2022) at 10, n. 4.

Mrs. Smith emphasizes that this was not a mistake and that CMS-1682-R was signed by Patrick Conway, M.D. AR3017. That is a "medical doctor" employed by the Secretary actually asserted the bad faith proposition that a CGM is not "primarily and customarily used to serve a medical purpose" with the resulting, expected injuries and deaths. These are the very "absurdities" and "atrocities" referred to by Voltaire.

Moreover, Mrs. Smith notes that the bad-faith continued after this litigation was filed. When finally forced to Answer the Complaint, the Secretary asserted

10

that the denials based on the illegally issued CMS-1682-R should be affirmed and Mrs. Smith not afforded "any relief whatsoever." *See* Dkt. #20. This is the epitome of bad faith. Mrs. Smith should be awarded her market rate attorneys fees. Likewise, the Secretary's contention that, even if illegally issued, this Court had no power to issue an injunction barring illegal conduct by the Secretary was in bad faith as obviously groundless/frivolous.

Mrs. Smith's counsel has exercised billing judgment and reduced the fees charged by 10% across the board for total fees of $84.980 and expenses of $402.

### B.  Fees Should Be Awarded Under the Lack of "Substantial Justification" Provision

While Mrs. Smith believes that fees should be awarded under the "bad faith" provisions of 28 U.S.C. § 2412(b), in the alternative, fees may also be awarded because the Secretary's position was not "substantially justified" under 28 U.S.C. § 2412(d).

#### 1.  Mrs. Smith Is the "Prevailing Party"

A party is the "prevailing party" if he had been "awarded some relief by the court" that amounts to a "court-ordered change in the legal relationship between the parties." *Buckhannon*, 532 U.S. at 603-4.

In the present case, Mrs. Smith is the "prevailing party." This Court ordered coverage of the three claims at issue in this case (Dkt. #52), *i.e.*, Mrs. Smith has been awarded "some relief by the court."

11

## 2. Mrs. Smith Is Eligible to Receive an Award

Pursuant to 28 U.S.C. § 2412(d)(2)(B), attached, is a declaration from Mrs. Smith attesting that her net worth has not exceeded $2,000,000 at any time during the course of this litigation. Thus, Mrs. Smith is eligible to receive an award of paragraph (d) fees.

## 3. Itemized Statement

Attached is the Pistorino Declaration including timesheets and billing from both the Parrish firm as well as Lear & Lear at their usual and customary rates for their respective markets.

These amount to:

| Firm | Hours | Rate | Total |
|---|---|---|---|
| Parrish Law Office | 158.9 | $515-575/hour | $87,078 |
| Lear & Lear | 15.3 | $480/hour | $7,344 |
| Total | 174.2 | | $94,442 |

In addition, there was a filing fee of $402.

## 4. The Government's Position Was Not "Substantially Justified"

Clearly, the government's position in this case was not "substantially justified" given that it was already determined to constitute "bad faith." No person, even an employee or attorney representing the Secretary, could ever reasonably assert that a CGM is not "primarily and customarily used to serve a medical purpose." As set forth above, that is a position asserted by the Secretary in illegally

12

issued CMS-1682-R which was used to deny tens of thousands of CGM claims and intentionally cause a concomitant number of severe hypoglycemic events/deaths.

### 5. There Are No "Special Circumstances" That Make an Award Unjust

Pursuant to 28 U.S.C. § 2412(d)(1)(A), Mrs. Smith states that there are no "special circumstances" that make a fee award unjust.

### 6. A Rate Enhancement Is Appropriate

Pursuant to 28 U.S.C. § 2412(d)(2)(A), attorneys fees in excess of $125/hour may be awarded if the court determines that an increase in the cost of living or some other special factor justifies the higher rate. *See, e.g., Gomez-Beleno v. Holder*, 644 F.3d 139, 146-7 (2nd Cir. 2011). The Consumer Price Index (CPI) is used to calculate the proper cost of living adjustment to the statutory rate of $125/hour. *See, e.g., Harris v. Sullivan*, 968 F.2d 263, 264-5 (2nd Cir. 1992). The CPI-U for the Western Region in May 2022 (309.64) divided by the same for March 1996 when the statutory rate was enacted (156.4) gives a multiplier factor of 1.98. The statutory rate ($125) multiplied by this factor results in a rate of $247.5/hour.

Applying this factor to the billed hours (174.5) results in a fee request of $43,114.

13

### 7. Mrs. Smith Enjoyed "Excellent Results"/"Exceptional Success"

As provided in *Hensley*, Mrs. Smith achieved both "excellent results" and "exceptional success." *Hensley*, 461 U.S. at 435. Rather than a potential "enhanced fee award", Mrs. Smith merely seeks her market rate attorneys fees.

In the present case, not only did Mrs. Smith achieve coverage of the three claims at issue, she also achieved rescission of CMS-1682-R, as well as retroactive coverage of CGM claims incurred prior to March 1, 2022, for both herself and tens of thousands of others. If achieving life-saving/extending coverage of a medical device that thousands of Medicare insureds would otherwise not be able to afford is not "exceptional success", then Mrs. Smith does not know what is.

As a result of Mrs. Smith's "excellent results"/"exceptional success", Mrs. Smith should be awarded her market rate attorneys fees under the lack of "substantial justification" provision of the statute. Accordingly, the fee award should be $84,980 (factoring in a 10% fee reduction).

### B. Costs/Expenses

Pursuant to 28 U.S.C. § 2412(a), filing fees are recoverable as "costs" against the government on behalf of a "prevailing party."

As set forth above, Mrs. Smith is the "prevailing party." Accordingly, her appellate filing fees of $402 should be reimbursed.

## CONCLUSION

Mrs. Smith's motion should be granted.

Dated: January 17, 2023						Respectfully submitted,

								PARRISH LAW OFFICES


								*/s/ James C. Pistorino*_____
								James C. Pistorino
								*Attorneys for Plaintiffs*


								LEAR & LEAR PLLC


								*/s/ Phillip Wm. Lear*
								Phillip Wm. Lear
								*Attorneys for Plaintiff*