Phillip Wm. Lear
Lear & Lear PLLC
808 E South Temple Street
Salt Lake City, UT 84102
Telephone:  (801) 538-5000
Facsimile:(801) 538-5001
Email:  phillip.lear@learlaw.com
Local Attorney for Linda P. Smith

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

LINDA P. SMITH,

     *Plaintiff*

     v.

XAVIER BECERRA, in his capacity
as the Secretary of the United States
Department of Health and Human
Services,

     *Defendant*

Case No. 1:21-cv-00047-HCN-DBP

PISTORINO DECLARATION IN
SUPPORT OF MOTION FOR
ATTORNEY'S FEES

JURY TRIAL DEMANDED

Judge Howard Nielson, Jr.
Magistrate Judge Dustin B. Pead

## DECLARATION OF JAMES PISTORINO

I, James Pistorino, makes this stamen of my own personal knowledge and, if called upon t do so, I could competently testify to the matters herein:

1.   I am a partner in the Parrish Law Firm, a graduate of Duke University School of Law, and have been a practicing lawyer involved in litigation for more than 25 years.

2.   Attached, as Exhibit A, is a true and correct copy of the transcript of the oral argument held before the Tenth Circuit on May 17, 2022.

3.   Attached, as Exhibit B are true and correct copies of the resumes/CVs of all the attorneys relevant to this fee petition.

4.   Attached, as Exhibit C are true and correct copies of the relevant billing statements, including both expenses and the attorneys time charged at their usual and customary rates in their respective markets.

5.   Attached, as Exhibit D, is a timeline of proceedings in this and related litigation.

Executed this 17th day of January, 2023, in San Mateo County, California.

_____
Mr. James Pistorino

1

# EXHIBIT A

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

* * * * * * * * * * * * * * * * * * * * * * * * * *

LINDA P. SMITH,

      Plaintiff-Appellant,

  -vs-                 No. 22-4012

XAVIER BECERRA, in his capacity
as Secretary of the United States
Department of Health and Social
Services,

      Defendant-Appellee.

* * * * * * * * * * * * * * * * * * * * * * * * * *

TRANSCRIPT OF RECORDED ORAL ARGUMENTS

THE PANEL:  CHIEF JUSTICE TIMOTHY TYMKOVICH
            JUDGE ALLISON EID
            JUDGE JOEL CARSON

                                 1

TRANSCRIPT OF ORAL ARGUMENTS, taken in the above-entitled action, from an audio recording of proceedings held on Tuesday, May 17, 2022.

* * * * *

A P P E A R A N C E S

JAMES C. PISTORINO,
    Attorney at Law,
    appearing on behalf of the
    plaintiff-appellant;

JOSHUA KOPPEL,
    Attorney at Law,
    appearing on behalf of the
    defendant-appellee.

* * * * *

                                 2

THE CHIEF JUSTICE:  I'll call our last case, 22-4012, Smith vs. Becerra.  And Mr. Pistorino.

MR. PISTORINO:  Thank you, Your Honor. James Pistorino on behalf of Mrs. Smith.  Nearly five years after submitting — after presenting her claim for Medicare coverage, Ms. Smith finally reached the district court, the first tribunal in the appeal process with the power to review and invalidate 1682-R.  The district court erred as a matter of law when it allowed the Secretary to avoid any judicial review when it concluded that the Secretary's agreement to pay her claims afforded Ms. Smith complete relief and left the court with no power to address the rest of Ms. Smith's causes of action, including her request for injunctive relief against 1682-R.

The district court's two-sentence docket entry entering judgment remanding solely for payment of Ms. Smith's claims but failing to make any findings or even consider the nonmonetary relief sought ignores that Ms. Smith's other causes of action were not alternative theories for monetary recovery.

                                 3

Instead they sought separate nonmonetary relief, including an injunction.

JUDGE CARSON:  Do you interpret the May 13th revised ruling as basically granting you a successful outcome on all your other pending claims?

MR. PISTORINO:  When you say the May 13th revised ruling, you mean — are you referring to the document that was submitted on Friday at 4:15?

JUDGE CARSON:  Yes.

MR. PISTORINO:  So the first answer is no.  I mean, honestly, again Ms. Smith sought —

JUDGE CARSON:  You don't interpret that as giving you a win across the board —

MR. PISTORINO:  No.

JUDGE CARSON:  — on pending claims? Why not?

MR. PISTORINO:  Again first off, again there's no injunction against the enforcement of 1682, number one.  There's no determination that the Secretary's process of issuing rulings without complying with notice and comment is in violation of the law.  Throughout this entire case and throughout the entire really five-year

                                 4

period this matter has been litigated, the
Secretary contends that they have the power to
issue rulings in violation of 1395h, the notice
and comment provision specific to the Medicare
Act, and as the Secretary said below here and
somewhat in the papers to this Court, the
Secretary contends the district courts have no
power to stop the agency from enacting illegally
in that way.

JUDGE CARSON:  So you're not going to
declare victory?

MR. PISTORINO:  No.  No, I wish —
frankly, I wish I could.

JUDGE CARSON:  Honestly, we need to
determine whether this is still justiciable
under the mootness doctrine.  What's your kind
of best response that it's not moot?

MR. PISTORINO:  Right.  So again
obviously we got the same papers you guys got on
Friday afternoon.  If I could just maybe quickly
two — a few points on that.  I actually thought
it was quite interesting in that essentially if
you were to read that document as sort of across
the board, they admitted what I've been saying
the entire time, that CGMs are in fact blood

5

glucose monitors as that term is used in the
statutes.

JUDGE CARSON:  Yeah,
congratulations.

MR. PISTORINO:  Thank you, Your Honor.
So across the board admitting, for example, that
the technical direction letter you saw mentioned
here, that that also did not stop the conduct.
Again you saw Judge Mendoza in the Olson case
out of Spokane say again that didn't stop it.
So through Friday, I'll say in our view, the
submission they made admitted that everything
they'd said before was wrong and everything we
said was right and so the case as it stood
before the district court certainly was not moot
and you still had the power, now coming to the
effect potentially Friday's letter.

So generally we would just respond
sort of three main points.  First, I know we
turned in a letter, I apologize for it, late
Sunday night citing the W. T. Grant case from
the Supreme Court going down the voluntary
cessation points and, of course, pointing out
that the mere ceasing of the illegal conduct
does not deprive the Court of jurisdiction to

6

issue an injunction is our number one, because,
of course, if they just stopped it, it would
allow them to continue the illegal conduct on a
going forward basis just as soon as this case
was resolved.

Next we — let me just make sure I —
so I think another important aspect that we
could get into, of course, is as we've been
saying all along, basically in our view, you
just have bad faith conduct from the get-go on
the 27 — 1682-R throughout the whole process.
So one aspect here is whether or not at the end
of the day, and I think as Judge Mendoza said,
whether or not they can be trusted with whatever
they say now, and I think as Judge Mendoza said,
again I know that we cited to, that he had
significant concerns that whatever they say
could be trusted, and that's one reason there,
for example, he said no, it's not moot based on
the TDL.

JUDGE CARSON:  Well, let's just talk
about this for just a second, and I don't mean
to interrupt.  But as far as the claims that you
have that are currently ripe for a decision, you
win.  They agreed to that.  You're not worried

7

that they're going to go back after they
confessed error and it was remanded for you to
get your damages, that they're going to on those
claims try to jerk the rug out from under you
and say no, we're not going to pay them, we
don't — we've changed our mind, we're not
confessing here, right?

MR. PISTORINO:  I agree with you in
the sense I'm not concerned that Ms. Smith will
not be paid for the three claims that are in
this case.  But I am concerned, number one, that
there's been no finding that her CGM is durable
medical equipment.  Because there's no — sadly,
there's no cure for type 1 diabetes that she
suffers from, she will have continued claims
going forward.  And one aspect —

JUDGE CARSON:  Right.  So let me stop
you there, so — and then you have other claims
that are pending that have not been ruled on by
a district court.

MR. PISTORINO:  Correct.

JUDGE CARSON:  And you also want as
part of your relief with respect to your appeal
from these three denials, you want relief as to
those that you have that are pending?

8

ORAL ARGUMENTS                                                    9

1    MR. PISTORINO:  No, that's not
2    correct.
3            JUDGE CARSON:  Well, that's what your
4    injunction would do, isn't it?  If you enjoin
5    them from enforcing it, then it basically gives
6    you a win on your other pending claims before
7    the district court?  Because if we're not doing
8    that, I mean if you win on everything that's
9    properly up here, what do you have?  What are we
10   enjoining?  You've already won.
11           MR. PISTORINO:  So I just want to make
12   clear because I know there's many different
13   claims at issue.  So we have the three claims at
14   issue in this case.
15           JUDGE CARSON:  Right.
16           MR. PISTORINO:  Three claims at issue
17   in this case, let's focus on those for a
18   moment.
19           JUDGE CARSON:  Right, and that's my
20   point.  I mean there's nobody in this room, is
21   there, that thinks that those claims are still
22   in play?  You won on those.
23           MR. PISTORINO:  I think with regard to
24   payment of those three claims, we won.  But what
25   we also asked for again was the nonmonetary

                                                    9

1    equipment under the statute, right.  A
2    declaration of that will have a real world
3    effect in that in future claims by Ms. Smith,
4    that would be determined and estop the Secretary
5    from contending otherwise.  We also asked — we
6    have a cause of action saying that with regard
7    to 1682, the Secretary did not comply with
8    Congress' statute in 1395hh, as signed by the
9    President, and subjected to notice and comment.
10           And what we asked for was a
11   determination that that particular conduct,
12   issuing rulings without complying with notice
13   and comment, is violative of the statute, and I
14   wanted an injunction estopping that.  And what
15   the Secretary has contended all along is, first,
16   we as the Secretary, I have the power to violate
17   the laws of Congress, I can act illegally,
18   that's what they argued below, if you look at
19   the appendix, their motion for summary judgment.
20   Assuming I did violate the statute, Court, you
21   have no power to control me.  You cannot stop me
22   from acting illegally.
23           So I think that's going to come right
24   back to your question about what was the effect
25   of yesterday — I'm sorry, Friday, what's the

                                                    11

1    relief, right, and there's different components
2    of that.
3            JUDGE CARSON:  Okay.  But let me ask
4    you, so your nonmonetary relief as it goes to
5    those three claims, I mean what is it?  I mean
6    what are you getting with respect to those three
7    claims other than payment?
8            MR. PISTORINO:  You're getting —
9            JUDGE CARSON:  You submitted them for
10   payment.  They denied it.  You appealed.  You
11   won and now — but you also won an injunction.
12   I just don't get with those three claims what's
13   left.
14           MR. PISTORINO:  Right.  So you keep on
15   saying we won, and I agree that we won in terms
16   of the payment, but again I have multiple causes
17   of action with different forms of relief.  All
18   the other ones are nonmonetary.
19           JUDGE CARSON:  Okay.  So tell me
20   about — tell me how the rest of them still live
21   after you get paid.
22           MR. PISTORINO:  Right.  So one thing
23   we asked for, for example, just the most simple
24   one, I might say, is a declaration that
25   Ms. Smith's CGM qualifies as durable medical

                                                    10

1    effect of Friday.  It just comes back.  Have
2    they ever disclaimed that position?  No.  That's
3    the position they maintain.  And again coming
4    back to what they — or their goal, it appears
5    to be, is to avoid judicial review of that
6    solely for the purpose of preserving that claim.
7            So whatever they did on Friday, right,
8    again I know what point I have here is that we
9    keep on calling them rulings, right, 1682-R, the
10   ruling.  It's just a letter written by somebody
11   at the department, right.  The January 17th
12   letter is just a letter written by a guy,
13   Patrick McConway (ph.), just a letter written by
14   a guy, right, totally illegal, again as it's
15   been found adjudged in the Olson case, bad
16   faith, just flat-out bad faith.  And on the
17   basis of that, right, again, for five years,
18   tens of thousands of claims have been denied,
19   hundreds of thousands actually, and tens of
20   thousands of people have been injured.
21           And so if you just look at the conduct
22   more recently, and candidly, I'm counsel in all
23   of these cases —
24           JUDGE CARSON:  Right.
25           MR. PISTORINO:  Every single case is

                                                    12

me.  Every single step that they have taken has
been an effort to avoid judicial review.  So
when they get a guy, for example, Mr. Olson and
then I win, if they could have, they would have
paid all his claims to make sure that he never
came back while they continued the bad faith
conduct, and that's exactly what Judge Mendoza
pointed to.

JUDGE CARSON:  But your theory is that
they're going to rescind the rescission and —
in other words, they've thrown in the towel
through this letter ruling and that your concern
is that there is — as soon as we turn our
backs, they're going to rescind that letter
ruling and start denying claims again.  I mean
that's — is that the path —

MR. PISTORINO:  So maybe I'll look at
it in three ways.  First, first, the whole
purpose of these efforts by them is to preserve
their ability to do exactly that.  So your
starting point would be — again just maybe more
globally, normally you just look at it and say
from the voluntary cessation perspective at just
a high level, when someone tells me they're not
going to do it, what's the reason I'm going to

13

trust them, right?  Why would I trust them, I
think that was a phrase used, whether or not
their change of behavior seems genuine, right,
and what my point is, across the board here,
it's not that it seems genuine.

It's the opposite.  You know it was
bad faith all the way through.  That got you to
Friday.  Now you go to the voluntary cessation
principles under which, of course, the Secretary
bears — I think the phrases are typically the
formidable burden, the heavy burden, a stringent
standard.  The Secretary would bear the burden
of establishing all of that.  And again just
coming back, for example, to this Court's case
in College America, another case, two main
prongs, first the voluntary —

JUDGE CARSON:  That doesn't sound like
something we can do on appeal.  That sounds like
it needs to be argued somewhere else either in
the administrative process or maybe back at the
district court.

MR. PISTORINO:  And at the end of the
day, whatever is settled, my point is just it
would be the Secretary's burden to establish it
and again if you look —

14

JUDGE CARSON:  And he hasn't even
tried to do it at this point, right?

MR. PISTORINO:  Right, right.  They
haven't tried —

JUDGE CARSON:  We'll find out in a few
minutes, but since Friday they haven't tried
to.

MR. PISTORINO:  They haven't tried to.
And again what we would say is again from the
voluntary cessation, you can trust me kind of
things, what you're looking for are indications,
bases under which to credit their statements.
So normally it's something formal like a
legislature takes action and you know that once
the legislature takes action, it's going to be
really hard to change that, and that's my whole
point here.

These "rulings," they're just letters.
There's no process.  A guy signed a letter in
2017.  Tens of thousands of people are injured.
On Friday, I guess Ms. Brooks decided she —
they didn't want to show up here like that.  She
just signs the letter.  If this Court were to
dismiss the case, or any court, there's just
absolutely no reason the next day, you sign the

15

letter and it's not like you say, well, I know
that won't happen because they're reasonable.
No, you know exactly the opposite, right.  So —
and again the other point, again I just had some
notes —

JUDGE CARSON:  Let me joust with you
for a minute about a couple things because what
concerns me is there's lots of things up in the
air here and a lot of them seem really
speculative to me.  A lot of the things you say
seem to be like concerning what might happen to
other people.  So I want to make sure we're
focused on your client and what you're doing.
Because you're not taking the position that you
should get an injunction to protect other
people, are you?  Your position is that you want
to go get an injunction so they can't do this to
your client going forward, is that right?

MR. PISTORINO:  I think actually the
technical answer would be both.

JUDGE CARSON:  Okay.

MR. PISTORINO:  Because again under
this, for example, National Mining — I know I
cited cases from this Court, when you're
litigating, exactly as we are here, the legality

16

1   of the conduct, compliance with the statute,
2   it's not just the statute for in this case
3   Ms. Smith.  It's for everybody.  So our goal
4   obviously just from a high level —
5        JUDGE CARSON:  Right.
6        MR. PISTORINO:  — this case is about
7   $5,000.  No one's going to litigate the case for
8   $5,000 solely.  It's very important to
9   Ms. Smith.  There are much bigger principles
10  that are driving it here.
11       JUDGE CARSON:  Got it.  So I'm just
12  thinking about the district court's remand here.
13  I mean obviously I guess this two-line docket
14  entry was followed up with a judgment.
15       MR. PISTORINO:  No, the two-line was
16  the judgment.
17       JUDGE CARSON:  It was the judgment?
18       MR. PISTORINO:  Yes.
19       JUDGE CARSON:  So the court entered
20  judgment —
21       MR. PISTORINO:  With the two lines.
22       JUDGE CARSON:  — in favor of you.
23  And so because the government, basically they
24  came in and confessed error?
25       MR. PISTORINO:  The court entered —
                                               17

1        Now, I get what you're saying, look,
2   they're jerking the rug out from under everybody
3   before, they're going to do it again, I don't
4   want to just be right here again arguing the
5   same thing to you and they give us a letter the
6   day before saying they're not going to do it
7   anymore.  I get that, but that's sort of what —
8   I'm just struggling with the idea that maybe
9   we're dealing with a case where what you want is
10  an injunction to prevent what might happen in
11  the future, not that, you know, there's any
12  imminent threat that is going to happen.
13       MR. PISTORINO:  So if I can — and
14  again I'm very conscious of my time.  And very
15  quickly to try to address it, so first —
16  actually I was just sitting here thinking, at a
17  high level manner, it's so ridiculous, it would
18  be funny except for the tens of thousands of
19  people that have been injured, right, except for
20  the debts, okay, so number one —
21       JUDGE CARSON:  Right.
22       MR. PISTORINO:  I want to come your
23  point about speculative.  I think that's a fair
24  thing, although again I know the second prong of
25  voluntary cessation is complete eradication of
                                               19

1   the Secretary said in so many words —
2        JUDGE CARSON:  Right.
3        MR. PISTORINO:  — we'll pay your
4   three claims, we'll give you that money, $5,000,
5   as long as the court does not address the
6   illegality or any of the other stuff you say,
7   that settlement offer rejected.  The court went
8   with that, said, okay, I'm going to adopt the
9   rejected settlement offer.  You say he entered
10  judgment for me.
11       He entered judgment saying I want them
12  to pay those three claims and everything else
13  I'm silent on.  And I'm sorry, I'm staying over
14  my time.
15       THE CHIEF JUSTICE:  We'll continue as
16  long as Judge Carson jousts —
17       JUDGE CARSON:  And I won't joust too
18  long, but I'm just — I mean it concerns me
19  because now what we're talking about is what
20  they might do going forward.  And in the face
21  of — which sounds speculative to me without
22  further denials.  It concerns me that maybe this
23  isn't ripe for a decision because the rest of
24  what you want is based on what might happen in
25  the future.
                                               18

1   the effect.  And of course, because they've been
2   denying these claims for five years, tens of
3   thousands of people have been dissuaded from
4   even submitting the claims.
5        JUDGE CARSON:  Right.
6        MR. PISTORINO:  So again just from the
7   thing that got submitted at 4:15 on Friday, how
8   would anybody know, right?  I mean was there
9   some big publicity campaign that they sent
10  emails — sent letters to everybody?  No.  From
11  the public's perspective, it's another secret
12  thing so they wouldn't know.  So the second
13  prong they could never show.
14       In terms of speculative, again their
15  whole thing is have they stopped, have they
16  forsworn the claim so they can issue rulings
17  without complying with notice and comment, 1395?
18  No, they have not.  They maintain that they
19  still can and that you all are completely
20  powerless no matter how many people they kill.
21  So is it speculative?  Not really when that's
22  the power they claim, right.  That's what
23  they're claiming as of today.
24       So, you know, again you talk about
25  gamesmanship.  Hey, something came in at 4:15,
                                               20

1   you know, two business days before their oral
2   argument and the appeal and you just see the
3   efforts of avoiding judicial review, so time and
4   time again.  The TDL, that came about because I
5   had a motion for preliminary injunction pending
6   in the Olson case, and I'd already had it
7   pending.  They thought they could knock it off
8   with that -- this because I had already argued
9   against the TDL, and it was obviously clearly
10  improper.  I appreciate your time.  Thank you.
11          THE CHIEF JUSTICE:  Are you done?
12          JUDGE CARSON:  I'm finished.
13          THE CHIEF JUSTICE:  Counsel, you may
14  be seated then.  Okay, let's hear from
15  Mr. Koppel for the Department of Human Services.
16          MR. KOPPEL:  Good afternoon, Your
17  Honors.  May it please the Court, I'm
18  Josh Koppel on behalf of the United States.
19          Plaintiffs sought judicial review of
20  Medicare's denial of three claims for payment.
21  The Secretary confessed error and the district
22  court properly entered judgment for plaintiff,
23  ordering the Secretary to pay the claims.
24          JUDGE CARSON:  Okay.  So tell me this.
25  What's the effect of that confession?  Was it as
                                              21

1   represented to me by your opposing counsel was
2   it's these three claims, we'll pay them, but we
3   want nothing to do with any other issue that's
4   on the table?
5           MR. KOPPEL:  The effect of the
6   confession in the district court was that these
7   three claims should have been paid and the
8   Secretary will pay them.  Now, the Secretary
9   went beyond that and explained that the reason
10  those claims should have covered in the first
11  instance is that plaintiff obtained supplies for
12  an insulin pump that could also perform the
13  functions of a continuous glucose monitor, and
14  insulin pumps have been considered durable
15  medical equipment covered by Medicare since the
16  mid-1990s.
17          The Medicare Appeals Council, they
18  failed to consider that and they got this wrong.
19  So all of Ms. Smith's future claims related to
20  her insulin pump should be paid.
21          JUDGE CARSON:  All right.  So --
22          MR. KOPPEL:  Now even if she didn't --
23          JUDGE CARSON:  So is it the
24  government's position that they would be -- I
25  mean through some sort of collateral estoppel or
                                              22

1   issue preclusion from denying this claim going
2   forward in the future as to Smith?
3           MR. KOPPEL:  I don't know that there
4   would necessarily be collateral estoppel based
5   on that confession of error.  That would be, you
6   know, certainly for a future court to decide.
7   But the Secretary has in the meantime taken
8   additional action to ensure that these claims of
9   plaintiff and of third parties will not be
10  denied.
11          The Secretary in November 2020 issued
12  a proposed rule and in December 2021 issued the
13  final rule making clear that adjunctive and
14  therapeutic continuous glucose monitors and
15  insulin pumps that perform the functions of a
16  CGM are durable medical equipment that are to be
17  covered by Medicare.  The Secretary -- I'm
18  sorry, the CMS then issued --
19          JUDGE CARSON:  Prospectively.
20          MR. KOPPEL:  That was prospectively.
21  And then CMS took action to apply that rule
22  retroactively as well, first with the technical
23  direction letter.  That was the quickest way CMS
24  could address the issue, although it left gaps,
25  for example, Medicare Part C.  And so then CMS
                                              23

1   worked toward this ruling that came out last
2   week, and I want to be clear, this is not a
3   letter signed by some guy.  This is a ruling
4   signed by the administrator of the Centers for
5   Medicare and Medicaid Services.
6           This is a formal statement of
7   coverage.  And so last Friday CMS issued this
8   CMS ruling, formally rescinding the 2017 CMS
9   ruling, and making clear that for pending and
10  future claims, regardless of the date of
11  service, all continuous glucose monitors and
12  insulin pumps that perform the functions of a
13  continuous glucose monitor are durable medical
14  equipment and will be covered by Medicare.  That
15  moots this case.
16          JUDGE CARSON:  Can that be rescinded
17  tomorrow?
18          MR. KOPPEL:  CMS administrative
19  rulings are not that easily rescinded, I'll say
20  that.
21          JUDGE CARSON:  They could, though --
22          MR. KOPPEL:  In theory, it could be
23  rescinded, but this Court -- and with regards to
24  voluntary cessation, the exception to mootness,
25  we haven't had a chance to really brief this
                                              24

1  because the issue just arose. But this Court
2  has repeatedly held that the withdrawal or
3  alteration of administrative policies can moot
4  an attack on those policies and that the mere
5  possibility that an agency might rescind
6  amendments to its actions does not align moot
7  controversy.
8       And I encourage the Court to take a
9  look at Denver Bible Church vs. Polis which was
10 issued this year, Prison Legal News vs. Federal
11 Bureau of Prisons in 2019 and Rio Grande Silvery
12 Minnow vs. Bureau of Reclamation in 2010. All
13 of those cases involved the rescission or
14 alteration of an administrative policy, and this
15 Court held that that rescission or alteration
16 mooted the attack on the policy.
17      The government is accorded a
18 presumption of good faith and unless there is
19 some evidence that the government is going to
20 rescind the rescission, the Court has held that
21 the rescission or alteration moots the claim.
22      JUDGE CARSON: There is a history here
23 of steadfast opposition to their statutory
24 theory. We can't ignore that, can we?
25      MR. KOPPEL: Well, to — I want to

25

1  answer that with — in two ways. First, I don't
2  think that there is a history of bad faith.
3  Even after some district courts have ruled that
4  continuous glucose monitors are durable medical
5  equipment, CMS did continue to apply the 2017
6  CMS ruling, as it was entitled to do, with
7  regard to other Medicare beneficiaries or other
8  claims.
9       Of course, if there had been a Court
10 of Appeals ruling on that issue, CMS would have
11 had a different policy within that circuit. If
12 there had been a Supreme Court ruling, of course
13 that would have been definitive. But CMS was
14 entitled to continue to apply that ruling and
15 continue to test the ruling in court.
16      In November 2020 CMS reconsidered the
17 issue, you know, in part due to, of course,
18 these repeated holdings by district courts. And
19 the continuous stream of actions since then has
20 been in one direction, so issuing the proposed
21 rule, issuing the final rule, issuing the TDL,
22 issuing this new CMS ruling.
23      Every action CMS has taken has
24 actually been to move toward covering for all
25 dates of service these continuous glucose

26

1  monitors as durable medical equipment. So
2  there's no indication that CMS is going to pull
3  the rug out. Second, even aside from mootness,
4  so even if the voluntary cessation exception
5  does apply, there's at least a question — or at
6  least two questions. First, one of rightness.
7  There's no — we don't know for sure what CMS
8  will do with any particular claim until CMS has
9  actually done that. And so a judicial ruling on
10 a future claim is not yet right.
11      And second, there's a jurisdictional
12 statutory authority issue, which is that a court
13 doesn't have statutory authority, it doesn't
14 have jurisdiction to consider a Medicare claim
15 until it has been presented to the agency.
16 There's no claim, other than the three here,
17 that have already been paid and judgment has
18 been entered and they've already been paid by
19 CMS. No other claim has yet been presented to
20 the agency and certainly has not yet reached the
21 final agency decision.
22      And so the district court simply
23 doesn't have jurisdiction to consider those
24 future claims.
25      JUDGE CARSON: Aren't all those future

27

1  claims going to be paid under the May 13th
2  ruling?
3       MR. KOPPEL: They absolutely should
4  be, and that is just an additional reason that
5  there's no — there's no cause for the district
6  court to issue a decision on the validity of the
7  2017 CMS ruling. That would be an advisory
8  opinion.
9       And you know, plaintiff has — shifts
10 tactics here. Instead of simply seeking a
11 decision on the 2017 CMS ruling, which would be
12 an advisory opinion, now plaintiff seeks an
13 advisory opinion on whether CMS rulings
14 generally can be issued without notice and
15 comment. That's certainly an advisory opinion.
16 It depends —
17      JUDGE CARSON: The plaintiff — are
18 you taking the position that claimants still
19 need to appeal their claims up to the MAC for
20 all these pending cases?
21      MR. KOPPEL: If there is a future
22 claim for coverage of a continuous glucose
23 monitor that is denied, that does need to be
24 appealed to the Medicare Appeals Council. After
25 that, CMS issues a final — or HHS issues a

28

1    final agency decision.  Only after that does the
2    statute permit the district court to exercise
3    jurisdiction and provide judicial review.
4          JUDGE CARSON:  I guess my question is
5    different.  Are the administrators, the
6    ALJs and the MAC still going to be relying on
7    1682-R —
8          MR. KOPPEL:  No.
9          JUDGE CARSON:  — or is that gone?
10          MR. KOPPEL:  That is gone.  The 1682-R
11    has been rescinded.
12          JUDGE CARSON:  So a claim that's
13    pending before the administrator, the ALJ or the
14    MAC basically should be adjudicated immediately
15    in favor of the claimant?
16          MR. KOPPEL:  Yes.
17          JUDGE CARSON:  Are there any
18    exceptions to that?  Will this be all glucose
19    monitoring claimants or do — I might have heard
20    you say that the monitor needed to be connected
21    to another durable medical device.  Did I
22    misunderstand that?
23          MR. KOPPEL:  No, the continuous
24    glucose monitor itself is the durable medical
25    equipment.  So there are —

                                                    29

1          JUDGE CARSON:  Standing alone, those
2    get covered now under this new policy?
3          MR. KOPPEL:  Yes.  Of course, provided
4    that the beneficiary actually has diabetes, you
5    know, and that it's diagnosed and they have to
6    be to using a dedicated continuous glucose
7    monitor, not a phone, like an iPhone, because
8    that has a — the primary purpose of that is not
9    medical.  But the mine run of cases, generally
10    speaking, what we're talking about here,
11    continuous glucose monitors starting immediately
12    are considered durable medical equipment.  Those
13    claims will be paid.  That's regardless of the
14    date service.  And even if a claim has been —
15    has already been denied, if that claim is still
16    pending, you know, it's on appeal to an ALJ, the
17    latest CMS ruling issued by the administrator
18    makes clear that that claim is to be reopened
19    and paid.
20          JUDGE CARSON:  And I guess this lawyer
21    would know his way around the agency process,
22    but I also have a question on the voluntary
23    cessation.  Why doesn't that still need to be
24    resolved somehow, either by this panel or by a
25    district court somewhere?  I don't know that

                                                    30

1    we're in a position to really evaluate that
2    claim yet.
3          MR. KOPPEL:  Yeah.  So because
4    voluntary cessation goes to mootness and
5    mootness is a jurisdictional issue, I believe
6    that this Court has an independent duty to make
7    a decision on the mootness question itself.  You
8    know, some of those cases that I cited, Denver
9    Bible Church, Prison Legal News, Rio Grande, at
10    least some of those I know that recission and
11    alteration of the administrative policy under
12    attack was issued while the case was on appeal
13    and this Court went ahead and made the decision
14    on mootness itself.
15          And you know, it is true that the
16    court has stated generally the party arguing in
17    favor of mootness bears the burden to show that
18    the challenged action won't be repeated, but the
19    court has also made clear in those cases that
20    where the challenged action was in an
21    administrative policy that has been rescinded or
22    altered, the burden is not quite so burdensome.
23    And in fact, the burden may even shift to the
24    plaintiff in those cases to show that there is
25    some cause to think that the government will

                                                    31

1    pull the rug out.
2          And certainly, you know, there's no
3    cause to think that these are formal rulings,
4    and keep in mind that the CMS ruling applies to
5    a closed set of cases because for dates of
6    service February 28th, 2022 going forward, those
7    cases, those claims are governed by the 2021
8    final ruling, which went through notice and
9    comment, you know, a very formal rule-making
10    process.  That really cannot easily be reversed
11    absent another notice and comment process.
12          So the CMS ruling applies to a closed
13    set of cases that every day is diminishing, and
14    there is no indication that the CMS
15    administrator for any reason would want to all
16    of a sudden switch policy with regard to that
17    closed and diminishing set of cases.  And of
18    course, you know, the CMS administrator cannot
19    reverse the 2021 final rule, you know, so
20    easily.  So the idea that the CMS ruling will be
21    reversed again as soon as this Court issues its
22    decision is quite implausible.
23          JUDGE CARSON:  Let me ask you a
24    question.  Are you familiar with the plaintiffs'
25    district court actions that are pending?

                                                    32

**[Page 33]**

1      MR. KOPPEL:  Some of them.  I'm not as
2  familiar with the ones —
3      JUDGE CARSON:  Okay.
4      MR. KOPPEL:  With all of them.
5      JUDGE CARSON:  Do you know as — why
6  hasn't the government confessed error in those
7  cases?  Why didn't — when they determined that
8  the three claims in this case should be paid
9  because the interpretation was wrong, why didn't
10  they confess error in those cases too?
11      MR. KOPPEL:  I'm not — I'm sorry, I
12  can't speak to those.
13      JUDGE CARSON:  Okay.
14      MR. KOPPEL:  I'm not familiar enough
15  with them.
16      JUDGE CARSON:  Let me tell you why I'm
17  asking you.
18      MR. KOPPEL:  Yeah.
19      JUDGE CARSON:  Because doesn't the
20  fact that they would confess error here and not
21  confess error in those cases suggest that it was
22  gamesmanship to confess error here and get this
23  case off the books?
24      MR. KOPPEL:  So, you know, one reason
25  is that the Secretary confessed error here

**[Page 34]**

1  immediately because plaintiff was using not just
2  a stand-alone continuous glucose monitor but an
3  insulin pump that also performs the functions of
4  a continuous glucose monitor, and that's really
5  a different category.  Insulin pumps have been
6  durable medical equipment again since the
7  mid-1990s.  So that's why the Secretary was able
8  to confess error here, you know, so quickly.
9      I do expect that with this new CMS
10  ruling, you know, the position may change in
11  those other courts.  I'm not sure —
12      JUDGE CARSON:  I don't understand why
13  that's different from counsel's other case.  As
14  I understand it, it's the same plaintiff, same
15  equipment, different payments.  These just
16  happen to have had a decision and could come up
17  on appeal.  Those are still pending with no
18  ruling.  And if they're the same and you confess
19  as to three and you don't confess as to the
20  others, I mean doesn't that suggest you're
21  trying to evade review?
22      MR. KOPPEL:  So it's certainly not the
23  same plaintiff, I want to be clear about that.
24  Smith — this is Smith's only action.
25      JUDGE CARSON:  Okay.

**[Page 35]**

1      MR. KOPPEL:  The other claims are
2  other plaintiffs.  Those other cases also
3  involve ancillary issues.  So, for example,
4  there's a case in the District of Columbia where
5  plaintiffs were trying to seek payment of claims
6  that had not been appealed and where the time to
7  appeal had run.  And so there are questions of
8  whether the district court had jurisdiction over
9  those.
10      I believe that in Olson, some of the
11  issues relate not to whether the claims should
12  have been paid but whether — what the
13  appropriate relief is, whether injunctive relief
14  should be issued, attorneys' fees, that kind of
15  thing.  So I don't — I don't want to speak to
16  those other cases.  I'm not familiar enough with
17  them to speak to them, but I'm not sure it's
18  true that the Secretary continues to not pay —
19  you know, continues to take the position that
20  continuous glucose monitors are not durable
21  medical equipment.
22      JUDGE CARSON:  Okay.
23      MR. KOPPEL:  And certainly this latest
24  CMS ruling I believe should make clear that, you
25  know, continuous glucose monitors are durable

**[Page 36]**

1  medical equipment going forward, you know, from
2  here on, regardless of the date of service, even
3  for past dates of service.
4      JUDGE CARSON:  Before you sit down, I
5  had a question on the equitable relief.  It
6  seems to me that the cases that I've reviewed
7  strongly suggest that 405(g) is a permissible
8  vehicle for some forms of equitable and
9  declaratory relief, and I'm not sure you really
10  denied that or opposed that in your papers.  But
11  do you agree that a district court could order
12  in an appropriate case some form of equitable
13  relief, an injunction or a declaratory judgment?
14      MR. KOPPEL:  Califano vs. Yamasaki
15  holds that some form of equitable relief is
16  available.  I'm not sure — and we took the
17  position, although we continue to take the
18  position that setting aside or enjoining a rule
19  to apply — such that the injunction would
20  require the Secretary to pay future claims that
21  haven't yet been presented —
22      JUDGE CARSON:  Well, that's a merits
23  question.
24      MR. KOPPEL:  Right.
25      JUDGE CARSON:  I'm talking about the

1  broader judicial power question.
2          MR. KOPPEL:  There is some set of
3  equitable remedies that are available.  You
4  know, Califano vs. Yamasaki addressed equitable
5  powers to ensure the pending — that the
6  pending — the status quo remains pending
7  resolution of litigation or to protect the
8  interests of the absent class members.  So
9  certainly those kinds of equitable powers are
10  available.  You know, here —
11         JUDGE CARSON:  I think that's a recent
12  DC circuit case, Parzakansky (ph.), that also
13  suggests equitable relief was proper in some
14  circumstances.
15         MR. KOPPEL:  Exactly.  But as that
16  case makes clear, and I think that's a very —
17  quite analogous case.  Just because Califano
18  held that equitable remedies are available, it
19  doesn't mean — it didn't determine when they're
20  available.  And where the plaintiff, and this is
21  what Parzakansky held, where the plaintiff seeks
22  equitable relief to decide future claims that
23  haven't been yet presented to the agency and
24  haven't yet reached a final agency decision,
25  those equitable remedies are not available.

                                             37

1          JUDGE CARSON:  But why wouldn't here a
2  declaration that the Secretary's interpretation
3  of the statute is wrong, why wouldn't that —
4  that just seems like a pretty garden variety
5  remedy that, you know, actually to the extent it
6  applies to, you know, thousands of other
7  claimants would be a good thing because it would
8  resolve the legal authority of the agency.  You
9  know, maybe the district court issues a
10  declaratory judgment that's appealed to a
11  circuit, you know, or whatever.  But that just
12  seems like kind of something that happens every
13  day in the district courts.
14         MR. KOPPEL:  So in the appropriate
15  case, a court can rule on the validity of a CMS
16  ruling.  So I mean there's a number of reasons
17  that this district court couldn't and shouldn't
18  going forward, you know, mootness, the 2017 CMS
19  ruling has been rescinded, the plaintiff's claim
20  wasn't properly decided under the 2017 CMS
21  ruling because that ruling didn't apply to
22  insulin pumps.  The appeals council erred in
23  applying the 2017 CMS ruling to plaintiff's
24  claim.
25         But in a case where, you know, HHS

                                             38

1  applies a CMS ruling to a claim properly and the
2  Secretary confess — you know, contests or
3  continues to contest the claim before the
4  district court, the district court can consider
5  the validity of the CMS ruling and if it's
6  invalid, that would be a basis to reverse and
7  remand.
8          The question that the district court
9  didn't get to, and I don't think this Court
10  needs to, is whether the district court can then
11  issue an injunction saying this CMS ruling also
12  shouldn't be applied in future cases because
13  that decides claims that haven't yet been
14  presented to the agency.
15         But in terms of deciding for purposes
16  of a present live claim for Medicare coverage
17  whether a CMS ruling is properly issued,
18  absolutely the circuit court can do that, and
19  that allows the Court of Appeals to rule on the
20  issue, potentially the Supreme Court, and we
21  certainly don't take issue with that.
22         In this case, however, not only is the
23  issue moot, but for all the reasons we've
24  explained, even if the issue were not moot, the
25  decision of the district court should be

                                             39

1  affirmed.  Thank you.
2          THE CHIEF JUSTICE:  Counsel, we
3  understand both your arguments.  Thank you very
4  much for clarifying the situation for us.
5  You're excused.  Your case shall be submitted,
6  and the Court will be in recess until 9 o'clock
7  tomorrow morning, I believe.

                                             40



```
 1              UNITED STATE COURT OF APPEALS

 2                 FOR THE TENTH CIRCUIT

 3    * * * * * * * * * * * * * * * * * *

 4    LINDA P. SMITH

 5        Plaintiff-Appellant

 6         -vs-                      Case 22-4012

 7    XAVIER BECERRA, in his capacity as
      Secretary of the United States
 8    Department of Health and Human Services,

 9            Defendant-Appellee.

10    * * * * * * * * * * * * * * * * * *

11

12              C E R T I F I C A T E

13

14        I, LISA A. CREERON, do hereby certify I took in

15    shorthand the proceedings held in the above-entitled

16    matter on the 17th day of May, 2022, and that the

17    attached is a true and correct transcription of the

18    proceedings so taken, to the best of my ability.

19        In witness whereof, I have hereunto set my hand

20    and affixed my seal of office this 21st day of May, 2022.

21

22              Notary Public, State of Wisconsin
                My Commission Expires: 1/30/2025
23

24

25
                                                     41
```



25:20.
rescinded 24:16, 24:19, 24:23, 29:11, 31:21, 38:19.
rescinding 24:8.
rescission 13:10, 25:13, 25:15, 25:20, 25:21.
resolution 37:7.
resolve 38:8.
resolved 7:5, 30:24.
respect 8:23, 10:6.
respond 6:18.
response 5:17.
rest 3:16, 10:20, 18:23.
retroactively 23:22.
reverse 32:19, 39:6.
reversed 32:10, 32:21.
review 3:10, 3:12, 12:5, 13:2, 21:13, 21:19, 29:3, 34:21.
reviewed 36:6.
revised 4:4, 4:8.
ridiculous 19:17.
rightness 27:6.
Rio 25:11, 31:9.
ripe 7:24, 18:23.
room 9:20.
rug 8:4, 19:2, 27:3, 32:1.
rule 23:12, 23:13, 23:21, 26:21, 32:19, 36:18, 38:15, 39:19.
rule-making 32:9.
ruled 8:19, 26:3.
ruling 4:4, 4:8, 12:10, 13:12, 13:15, 24:1, 24:3, 24:8, 24:9, 26:6, 26:10, 26:12, 26:14, 26:15, 26:22, 27:9, 28:2, 28:7, 28:11, 30:17, 32:4, 32:8, 32:12, 32:20, 34:10, 34:18, 35:24, 38:16, 38:19, 38:21, 38:23, 39:1, 39:5, 39:11, 39:17.
rulings 4:22, 5:3, 11:12, 12:9, 15:18, 20:16, 24:19, 28:13, 32:3.
run 30:9, 35:7.
.
.
<S>.
sadly 8:13.
saw 6:7, 6:9.
saying 5:24, 7:9, 10:15, 11:6, 18:11, 19:1, 19:6, 39:11.
seal 41:31.
seated 21:14.
Second 7:22, 19:24, 20:12, 27:3, 27:11.
secret 20:11.
Secretary 1:14, 3:12, 3:13, 4:22, 5:2, 5:5, 5:7, 11:4, 11:7, 11:15, 11:16, 14:9, 14:12, 14:24, 18:1, 21:21, 21:23, 22:8, 23:7, 23:11, 23:17, 33:25, 34:7, 35:18, 36:20, 38:2, 39:2, 41:14.
seek 35:5.
seeking 28:10.
seeks 28:12, 37:21.
seem 16:9, 16:11.
seems 14:3, 14:5, 36:6, 38:4, 38:12.
sense 8:9.
sent 20:9, 20:10.
separate 4:1.
service 24:11, 26:25, 30:14, 32:6, 36:2, 36:3.
Services 1:16, 21:15, 24:5, 41:15.
set 32:5, 32:13, 32:17, 37:2, 41:30.
setting 36:18.
settled 14:23.
settlement 18:7, 18:9.
shall 40:5.
shift 31:23.
shifts 28:9.
shorthand 41:26.
shouldn't 38:17, 39:12.
show 15:22, 20:13, 31:17, 31:24.
sign 15:25.
signed 11:8, 15:19, 24:3, 24:4.
significant 7:17.
signs 15:23.
silent 18:13.
Silvery 25:11.
simple 10:23.
simply 27:22, 28:10.
single 12:25, 13:1.
sit 36:4.
sitting 19:16.
situation 40:4.
SMITH 1:7, 3:2, 3:5, 3:7, 3:14, 3:16, 3:21, 3:24, 4:13, 8:9, 10:25, 11:3, 17:3, 17:9, 22:19, 23:2, 34:24, 41:7.
Social 1:15.
solely 3:20, 12:6, 17:8.
somebody 12:10.
somehow 30:24.
someone 13:24.
somewhat 5:6.
somewhere 14:19, 30:25.
soon 7:4, 13:13, 32:21.
sorry 11:25, 18:13, 23:18, 33:11.
sort 5:23, 6:19, 19:7, 22:25.
sought 3:23, 4:1, 4:13, 21:19.
sound 14:17.
sounds 14:18, 18:21.
speaking 30:10.
specific 5:4.
speculative 16:10, 18:21, 19:23, 20:14, 20:21.
Spokane 6:10.
stand-alone 34:2.
standard 14:12.
Standing 30:1.
start 13:15.
starting 13:21, 30:11.
State 41:1, 41:34.
stated 31:16.
statement 24:6.
statements 15:12.
States 1:3, 1:14, 21:18, 41:14.
status 37:6.
statute 11:1, 11:8, 11:13, 11:20, 17:1, 17:2, 29:2, 38:3.
statutes 6:2.
statutory 25:23, 27:12, 27:13.
staying 18:13.
steadfast 25:23.
step 13:1.
stood 6:14.
stop 5:8, 6:8, 6:10, 8:17, 11:21.
stopped 7:2, 20:15.

stream 26:19.
stringent 14:11.
strongly 36:7.
struggling 19:8.
stuff 18:6.
subjected 11:9.
submission 6:12.
submitted 4:9, 10:9, 20:7, 40:5.
submitting 3:6, 20:4.
successful 4:5.
sudden 32:16.
suffers 8:15.
suggest 33:21, 34:20, 36:7.
suggests 37:13.
summary 11:19.
Sunday 6:21.
supplies 22:11.
Supreme 6:22, 26:12, 39:20.
switch 32:16.
.
.
<T>.
T. 6:21.
table 22:4.
tactics 28:10.
TDL 7:20, 21:4, 21:9, 26:21.
technical 6:7, 16:20, 23:22.
tells 13:24.
Tens 12:18, 12:19, 15:20, 19:18, 20:2.
TENTH 1:4, 41:3.
term 6:1.
terms 10:15, 20:14, 39:15.
test 26:15.
theories 3:25.
theory 13:9, 24:22, 25:24.
therapeutic 23:14.
they've 13:11, 20:1, 27:18.
thinking 17:12, 19:16.
thinks 9:21.
third 23:9.
though 24:21.
thousands 12:18, 12:19, 12:20, 15:20, 19:18, 20:3, 38:6.
threat 19:12.
Three 6:19, 8:10, 8:24, 9:13, 9:16, 9:24, 10:5, 10:6, 10:12, 13:18, 18:4, 18:12, 21:20, 22:2, 22:7, 27:16, 33:8, 34:19.
Throughout 4:24, 4:25, 7:11.
thrown 13:11.
TIMOTHY 1:28.
today 20:23.
tomorrow 24:17, 40:7.
took 23:21, 36:16, 41:25.
totally 12:14.
toward 24:1, 26:24.
towel 13:11.
TRANSCRIPT 1:25, 2:1.
transcription 41:28.
tribunal 3:9.
tried 15:2, 15:4, 15:6, 15:8.
true 31:15, 35:18, 41:28.
trust 14:1, 15:10.
trusted 7:14, 7:18.
try 8:4, 19:15.
trying 34:21, 35:5.
Tuesday 2:3.
turn 13:13.
turned 6:20.
two 5:21, 14:15, 17:21, 21:1, 26:1, 27:6.
two-line 17:13, 17:15.
two-sentence 3:19.
TYMKOVICH 1:28.
type 8:14.
typically 14:10.
.
.
<U>.
understand 34:12, 34:14, 40:3.
United 1:3, 1:14, 21:18, 41:1, 41:14.
unless 25:18.
until 27:8, 27:15, 40:6.
using 30:6, 34:1.
.
.
<V>.
validity 28:6, 38:15, 39:5.
variety 38:4.
vehicle 36:8.
victory 5:11.
view 6:11, 7:9.
violate 11:16, 11:20.
violation 4:24, 5:3.
violative 11:13.
voluntary 6:22, 13:23, 14:8, 14:16, 15:10, 19:25, 24:24, 27:4, 30:22, 31:4.
vs 3:2, 25:9, 25:10, 25:12, 36:14, 37:4.
.
.
<W>.
W. 6:21.
wanted 11:14.
ways 13:18, 26:1.
week 24:2.
whatever 7:14, 7:17, 12:7, 14:23, 38:11.
whereof 41:30.
whether 5:15, 7:12, 7:14, 14:2, 28:13, 35:8, 35:11, 35:12, 35:13, 39:10, 39:17.
whole 7:11, 13:18, 15:16, 20:15.
Will 8:9, 8:15, 11:2, 22:8, 23:9, 24:14, 27:8, 29:18, 30:13, 31:25, 32:20, 40:6.
win 4:15, 7:25, 9:6, 9:8, 13:4.
Wisconsin 41:34.
wish 5:12, 5:13.
withdrawal 25:2.
within 26:11.
without 4:23, 11:12, 18:21, 20:17, 28:14.
witness 41:30.
won 9:10, 9:22, 9:24, 10:11, 10:15.
words 13:11, 18:1.
worked 24:1.
world 11:2.
worried 7:25.
written 12:10, 12:12, 12:13.
.
.
<X>.
XAVIER 1:13, 41:13.
.
.
<Y>.
Yamasaki 36:14, 37:4.
year 25:10.
years 3:6, 12:17, 20:2.
yesterday 11:25.

# EXHIBIT B

# JAMES CHARLES PISTORINO
224 Lexington Dr.
Menlo Park, CA 94025
(650) 400-0043

## EXPERIENCE:

September 2015 - present

**PARTNER:** Parrish Law Office:  Litigation/Appellate practice.

March 2011 – September 2015

**PARTNER.** Perkins Coie, LLP.  Intellectual Property litigation involving patents and copyrights and breach of contract actions in federal courts and arbitrations.

2004-2011, 1996-2004

**PARTNER/ASSOCIATE.** Howrey Simon Arnold & White (formerly Arnold, White & Durkee).  Involved in full range of intellectual property representation including patent, copyright, trademark, and trade secret litigation, patent and trademark prosecution, motion and appellate practice, contracts, and legal research.  Special emphasis on computer software related issues.

March – May 2001

**ASSISTANT DISTRICT ATTORNEY.** Dallas County District Attorney's Office.  Participated in the Lawyer's On Loan program prosecuting misdemeanor cases.  Prosecuted thirteen (13) jury trials and five (5) trials before the Court.

May - August, 1995

**LAW CLERK.** United States International Trade Commission, Office of Unfair Import Investigations.  Legal research and memoranda related to patent infringement litigation.

## REPRESENTATIVE MATTERS:

*Driessen v. Sony Music Entertainment, et al.* (Utah)
    Defend Sony Music, Best Buy, Target, FYE in patent case involving music cards
*Clouding v. Amazon, Inc., et al.* (Del)
    Defend Amazon, Rackspace, Dropbox in cases related to cloud computing
*Round Rock Research LLC v. AsusTek Computer Inc., et al.* (Del)
*AsusTek Computer Inc. et al. v. Round Rock Research LLC* (ND Cal)
    Defend AsusTek in cases involving 16 patents related to computer components
*Technology Innovations Associates, LLC v. Google, Inc.* (Del)
    Defend Google in patent case involving user interfaces
*Mount Hamilton Partners LLC v. Google, Inc.* (ND Cal)
    Defend Google in patent case related to coupons
*FuzzySharp Technologies Inc. v. Intel Corp.* (ND Cal)
    Defend Intel in patent case related to 3D graphics
*Princeton Digital Imaging Corp. v. Amazon.com/Netflix* (Del) (ongoing)
    Represent Amazon/Netflix in patent case involving JPEG
*Techsavies LLC v. WDFA Marketing, Inc.* (ND Cal) (2010-2011)

Pistorino Resume
Page 2

Represent TechSavies in breach of contract/copyright matter
*Scientific Plastic Products, Inc. v. Merck & Co., Inc., et al.* (SD Cal) (2009)
Defend Merck in patent case related to flash chromatography
*CalCars, Inc. v. California Cars Initiative, Inc.* (CD Cal) (2008)
Defend CCI in trademark infringement dispute
*Anticancer v. Merck & Co., Inc.et al.* (SD Cal) (2007-10)
Defend Merck in five patent case related to green fluorescent protein
*Visto Corp. v. Seven Networks, Inc.* (ED Tex) (2005-2007)
Defend Seven in multiple cases related to email synchronization
*Streck Laboratories v. Beckman Coulter et al* (Neb) (1999-2000)
Represent Streck in patent case related to blood substitutes

## ADMISSIONS:

State Bars of California and Texas, United States Patent & Trademark Office,, numerous
Courts of Appeals, including the Supreme Court

## EDUCATION:

**Duke University School of Law**, Durham, NC.
J.D. May 1996
**Duke University**, Durham, NC.
B.S. with Distinction in Computer Science May 1993

## PUBLICATIONS/MEMBERSHIPS:

SF Bay Area IP Inn of Court
President (2012 –2014), Vice-President (2010-12), Treasurer (2008-10)
University of California Hastings Schools of Law (Spring 2013-Spring 2016t)
Adjunct professor, Patent Litigation
Santa Clara University (Summer 2012)
Adjunct professor, Patent Litigation Strategies and Tactics

James C. Pistorino, *2012 Trends in Patent Case Filings*, BNA, (February 2013)
James C. Pistorino, *2011 Trends in Patent Case Filings*, BNA, (March 2012)
James C. Pistorino, *Concentration of Patent Cases Increases in
Eastern District of Texas in 2010,* BNA, (April 2011)
James C. Pistorino, *Another Way to Attack Written Description in Re-Exam*,
IPLaw360 (August 2010)
Glenn W. Rhodes, PATENT LAW HANDBOOK (1998-99, 1999-2000 eds)
Chapter on summary judgment, portions of chapter on equitable defenses.
James C. Pistorino, *Recent Developments in Patent Law*,
6 TEX. INTELL. PROP. LAW. J. 355 (1998).

Numerous speeches to ACC and other groups.



The Downey Mansion
808 East South Temple Street
Salt Lake City, Utah 84102
801-538-5000
Fax: 801-538-5001
www.learlaw.com

**Phillip Wm. Lear
Attorney**



**Emeritus Attorney
Of Counsel**

phillip.lear@learlaw.com
**801-231-1428**

## PRACTICE FOCUS

Natural resources and public lands law with emphasis on acquisition, exploration, permitting and production of oil, gas, and mining properties; oil and gas conservation matters; complex title examinations; administrative hearings and appeals; natural resources litigation and appeals; mergers and acquisitions; mineral financing; water rights; natural resources law on Indian reservations; and expert witness for mineral and public lands-related matters.

## EDUCATION

University of Utah (J.D., 1975; H.B.A., magna cum laude, 1969)
  Phi Beta Kappa, Phi Alpha Theta
  Graduate, Honors College

## COURT ADMISSIONS

United States Supreme Court
United States Court of Appeals, Ninth and Tenth Circuits
United States Court of Federal Claims
United States District Courts, Districts of Utah and Colorado, District of Columbia
Supreme Courts of Utah and Colorado Ute Indian Tribal Court, Uintah and Ouray Reservation (Utah)

## PROFESSIONAL MEMBERSHIPS AND ACTIVITIES

American Bar Association
Utah, Colorado State Bars
Salt Lake County Bar Association
Rocky Mountain Mineral Law Foundation
    President (2002-2003)    Vice President–President Elect (2001-2002);
    Secretary (1997-1998)    Member-at-Large, Executive Committee (1994-1996)
    Trustee (1984-1987, 1989-1991, 1994-1997, 1999-present)
    Program Chair, 35th Annual Rocky Mountain Mineral Law Institute (1989)
American Association of Professional Landmen / Chair, Special Institutes Committee (1990-1996)
Utah Association of Professional Landmen, President (1997-1998)
Utah Petroleum Association / Petroleum Association of Wyoming

## OTHER PROFESSIONAL EXPERIENCE

Founder and Senior Partner, Lear & Lear PLLC (2001-2016)
Partner, Snell & Wilmer, Salt Lake City, Utah (1993-2001)
Shareholder, Van Cott, Bagley, Cornwall and McCarthy, Salt Lake City, Utah (1979-1993)
Associate, Pruitt & Gushee, Salt Lake City, Utah (1975-1979)
Lieutenant, United States Navy (1969-1972)

{00085951.1}

## REPRESENTATIVE PUBLICATIONS

*Use of Technology in the Preparation of an Opinion and Calculations Workshop,* ADVANCED MINERAL TITLE EXAMINATION, PAPER 24 (Rocky Mt. Min. L. Fdn. 2014).

*Mineral Title Examinations: The Whos, Whats, Whens, Wheres, and Whys of Mineral Title Assurance,* MINERAL TITLE EXAMINATION IV, PAPER 1 (Rocky Mt. Min. L. Fdn. 2007).

*Split Estates and Severed Minerals: Rights of Access and Surface Use after the Divorce (and Other Leasehold Access-Related Problems,* 50 ROCKY MT. MIN. L. INST. 10-1 (2004) [co-authored].

*Rights of Access and Permitting for Coalbed Methane,* Society of Professional Engineers Applied Technology Workshop; Coal Bed Gas Resources of Utah, SPE Paper No. 87084 (2003).

*Coal and Coalbed Methane Development Conflicts Revisited: The Oil and Gas Perspective,* PUBLIC LAND LAW, REGULATION, AND MANAGEMENT, Paper 10 (Rocky Mt. Min. L. Fdn. 2003).

*The Ethical Landman: All you Need to Know about Ethics You Learned in Sunday School,* ETHICS & PROF. RESPONSIBILITY (Rocky Mt. Min. L. Fdn. 2000).

*Access to Indian Land and Title Records: Freedom of Information, Privacy, and Related Issues,* NAT. RESOURCES DVPT. & ENVTL REG. IN INDIAN COUNTRY, Paper 4-1 (Rocky Mt. Min. L. Fdn. 1999) [co-authored].

*Utah Oil and Gas Conservation Law & Practice,* 1998 UTAH L. REV. 89 (1998); ONSHORE POOLING & UNITIZATION Paper 5C (Rocky Mtn. Min. L. Fdn. 1997).

*Cooperative Multiple Mineral Development Agreements: A Nuts and Bolts Approach,* 43 ROCKY MTN. MIN. L. INST. 3-1 (1997).

*Modern Oil & Gas Conservation Practice: And You Thought the Law of Capture was Dead?,* 41 ROCKY MTN. MIN. L. INST. 17-1 (1995) [co-authored].

*Exhaustion of Tribal Court Remedies and Federal Questions: Rejecting Bright-Line Rules and Affirmative Action,* 71 N.D. L. REV. 277 (1995) [co-authored].

*Division Order Issues in the 1990's: State Policing of an Unresponsive Industry,* OIL & GAS ROYALTIES ON NON-FEDERAL LANDS, Paper 6 (Rocky Mt. Min. L. Fdn. 1993).

*Multiple Mineral Development Conflicts in Coalbed Methane Operations,* COALBED GAS DEVELOPMENT: EAST AND WEST, Paper 4A (Rocky Mt. Min. L. Fdn. 1992).

*Accretion, Reliction, Erosion, and Avulsion: A Study in Riparian and Littoral Title Problems,* 29 PUB. LAND & RESOURCES L. DIG. 11 (1992); 11 J. ENERGY, NAT. RESOURCES & ENVTL. L. 265 (1991).

*Conflicts in Simultaneous Mineral Operation Revisited: Armageddon One Day Closer,* THE LANDMAN [Part: I Jan/Feb]; [Part 2 Mar/Apr]; [Part 3 May/June] (American Assoc. of Petroleum Landmen 1992).

*Representations, Warranties, Covenants, Conditions, and Indemnities: Stitching Them Together in the Purchase Agreement,* 37 ROCKY MT. MIN. L. INST. 3-1 (1991).

*Conservation Principles and Federal Onshore Pooling and Unitization: An Overview,* FEDERAL ONSHORE POOLING AND UNITIZATION 11, Paper I (Rocky Mt. Min. L. Fdn. 1990).

*First Purchaser Suspense Accounts,* 33 ROCKY MT. MIN. L. INST. 17-1 (1988).

Chapter XXIII *Conflicts in the Development of Other Minerals,* 2 LAW OF FEDERAL OIL AND GAS LEASES (Rocky Mt. Min. L. Fdn., Rel. 2008).

*Multiple Mineral Development Conflicts: An Armageddon in Simultaneous Mineral Operations?,* 28 ROCKY MT. MIN. L. INST. 79 (1983).

*Examination of Title to Fee Lands,* MINERAL TITLE EXAMINATION 11, Paper 2 (Rocky Mt. Min. L. Fdn., 1982); Chapter 92, *Examination of Title to Fee Lands,* 3 AMERICAN LAW OF MINING (Rocky Mt. Min. L. Fdn., Rel. 20-7/85).

*Lurking Title Problems: Snares for the Unsuspecting Federal Oil and Gas Lease Title Examiner,* 25 ROCKY MT. MIN. L. INST. 18-1 (1980).

*Utah's Short Statutes of Limitations for Tax Titles: The Continuing Specter of Lyman v. National Mortgage Bond Corp. - A Need for Remedial Legislation,* BYU L. REV. 457 (1976).

*Tax Sales and Tax Titles in Utah: Windfalls and Windstorms,* 1 J. CONTEMP. L. 299 (1975).

## PRESENTATIONS AND SEMINARS

"Use of Technology in the Preparation of an Opinion and Calculations Workshop," Advanced Mineral Title Examination, Rocky Mountain Mineral Law Foundation (Denver, Colorado, January 2014).

Mineral Title Examinations: The Whos, Whats, Whens, Wheres, and Whys of Mineral Title Assurance, Mineral Title Examination IV (Denver, Colorado, September 2007).

Split Estates and Severed Minerals: Rights Of Access and Surface Use after the Divorce (and Other Leasehold Access-Related Problems, Rocky Mountain Mineral Law Foundation (Vail, Colorado, July 2004).

Coal and Coalbed Methane Development Conflicts Revisited: The Oil and Gas Perspective, Rocky Mountain Mineral Law Foundation (Santa Clara, New Mexico, May 2003).

2

Rights of Access and Permitting for Coalbed Methane, Society of Professional Engineers Applied Technology Workshop, Coalbed Gas Resources of Utah (Alta, Utah, October 2003).

Post-Production Costs, 30th Annual Institute of the National Association of Division Order Analysts (Salt Lake City, September 2003); Utah Association of Professional Landmen (Salt Lake City, 2003); Rocky Mountain Association of Petroleum Accountants (Salt Lake City, 2003).

The Ethical Landman:  All you Need to Know About Ethics You Learned in Sunday School, Special Institute of the Rocky Mountain Mineral Law Foundation (Denver, December 2000), AAPL Annual Meeting (Salt Lake City, June 2001).

Access to Indian Land and Title Records: Freedom of Information, Privacy, and Related Issues, Special Institute of the Rocky Mountain Mineral Law Foundation (Denver, May 1999).

Cooperative Multiple Mineral Development Agreements: A Nuts and Bolts Approach, 43rd Annual Rocky Mountain Mineral Law Institute (Portland, July 1997).

Utah Oil and Gas Conservation Law & Practice, Onshore Pooling & Unitization, Special Institute of the Rocky Mountain Mineral Law Foundation (Denver, January 1997).

Modern Oil & Gas Conservation Practice:  And You Thought the Law of Capture was Dead?, 41st Annual Rocky Mountain Mineral Law Foundation (Sun Valley, June 1995).

Symposium:  Natural Resources Development and Tribal Rights, North Dakota Law Review, University of North Dakota School of Law (Grand Forks, April 1995).

Ethical Considerations for Landmen, CLE sponsored by the Utah Association of Petroleum & Mining Landmen (Salt Lake City, February 1995).

Multiple Mineral Development Conflicts between Oil and Gas and Trona in Southwestern Wyoming, Annual Meeting of the Rocky Mountain Oil & Gas Association (Denver, September 1994).

Symposium:  Royalty and Division Order Issues in the Rocky Mountain States; 20th Annual Institute of the National Association of Division Order Analysts (San Diego, September 1993).

Division Order Issues in the 1990's: State Policing of an Unresponsive Industry, Oil & Gas Royalties on Non-Federal Lands, Special Institute of the Rocky Mountain Mineral Law Foundation (Santa Fe, April 1993).

Symposium:  Indian Mineral Development Act, 1992 Field Symposium of the Utah Geological Association (Vernal, Utah, May 1992).

Multiple Mineral Development Conflicts in Coalbed Methane Operations, Coalbed Gas Development:  East and West Special Institute of the Rocky Mountain Mineral Law Foundation (Santa Fe, March 1992).

Representations, Warranties, Covenants, Conditions, and Indemnities: Stitching Them Together in the Purchase Agreement, 37th Annual Rocky Mountain Mineral Law Institute (Monterey, July 1991).

Accretion, Reliction, Erosion, and Avulsion: A Study in Riparian and Littoral Title Problems, 18th Annual Institute of the National Association of Division Order Analysts (Washington, D.C., September 1991).

Conflicts in Simultaneous Mineral Operation Revisited: Armageddon One Day Closer, 37th International Conference and Annual Meeting of the American Association of Petroleum Landmen (Denver, June 1991).

Symposium:  Northern Rocky Mountains Workshop--Trusts:  Concepts and Problems for Division Order Analysts; Statutory Pooling Orders; Descent and Distribution:  Rudiments of Intestacy Law for Division Order Analysts; Oil and Gas Royalty Provisions:  A Review for Division Order Analysts; 17th

Annual Institute of the National Association of Division Order Analysts (Phoenix, August 1990).
    Public and Indian Land Issues in Commercial Transactions, Environmental & Natural Resources Issues in Commercial Transactions, CLE of the Utah State Bar (Salt Lake City, April 1990).

Conservation Principles and Federal Onshore Pooling and Unitization: An Over-view, Federal Onshore Pooling and Unitization II, Special Institute of the Rocky Mountain Mineral Law Foundation (Denver, January 1990).

First Purchaser Suspense Accounts, 33rd Rocky Mountain Mineral Law Institute (Vail, Colorado, July 1987); Houston Association of Division Order Analysts (Houston, May 1988); National Association of Division Order Analysts (Denver, September 1989).

Multiple Mineral Development Conflicts: An Armageddon in Simultaneous Mineral Operations? (Vail, Colorado, July 1982).

Examination of Title to Fee Lands, Rocky Mountain Mineral Law Foundation (Tucson, April 1982).

Lurking Title Problems: Snares for the Unsuspecting Federal Oil and Gas Lease Title Examiner (Seattle, July 1979).

3

# Debra M. Parrish

788 Washington Road
Pittsburgh, PA 15228
412-561-6250

1050 Conn. Ave., 10th Fl.
Washington, DC 20036
202-772-4254

debbie@dparrishlaw.com
412-561-6253 (fax)
412-337-2718 (cell)

## PROFESSIONAL EXPERIENCE

- **Parrish Law Offices**, 1999-Present
  Representing and counseling health care providers, research institutions, journals and life science companies in the areas of health care law (including reimbursement for innovative technology), science law (compliance with research regulations, investigations and research misconduct), intellectual property (including litigation, licensing, contracts and employee agreements).

- **Titus & McConomy LLP**, elected partner in 1996, 1994-1999
  Involved in complex litigation, science law (including research misconduct and research regulations, compliance and investigations including criminal investigations of life science companies), intellectual property (patent prosecution and litigation) and health care law.

- **Office of Research Integrity, Office of the General Counsel, Department of Health & Human Services**, 1992-1994
  Drafted rules and regulations governing scientific misconduct and research fraud; reviewed, investigated and prosecuted allegations of scientific misconduct.

- **Fulbright & Jaworski**, Washington, DC, Associate, 1989-1992
  Represented national health care clients on medical staff issues, Medicare/Medicaid reimbursement, and litigation involving health care providers; litigated intellectual property cases.

## EDUCATION
- J.D., Duke University School of Law
- B.S.E., Biomedical Engineering, Duke University
- M.P.H., Johns Hopkins Bloomberg School of Public Health (expected 2021)

## BAR MEMBERSHIPS AND ASSOCIATIONS
- United States Court of Appeals for the Second Circuit
- United States Court of Appeals for the Ninth Circuit
- United States Court of Appeals for the Eleventh Circuit

43

- American Health Lawyers Association
- Society for Research Administrators
- National Association of College and University Attorneys
- American Bar Association, 2017 winner of the *Pro Bono Publico* Award
- Pennsylvania, North Carolina, District of Columbia and Florida Bar
- Patent Bar
- Allegheny County Bar Association
- Public Responsibility in Medicine and Research
- Council of Science Editors

## ACTIVITIES
- **Council of Science Editors,** Editorial Policy Committee, 2004-Present
- **International Business Ethics Institute,** Director and Consultant, 1994-present
- **Institutional Review Board,** University of Pittsburgh Medical Center, 1994-1999
- **Adjunct Professor,** University of Pittsburgh Medical Center, Spring 2016

## SELECTED SPEECHES

National Presentations

- **"Research Misconduct: A Year in Review,"** Society of Research Administrators International, San Francisco, CA, October 2019 and October 2020.

- **"Patents and IP Protection: Why They Matter to Us,"** Society of Research Administrators International, San Francisco, CA, October 2019.

- **"Advocacy for Medicare Coverage for Diabetes,"** American Association of Diabetes Educators, Baltimore, MD, August 2018.

- **"DMEPOS Update,"** American Health Lawyers Association, Baltimore, MD, March 2017.

- **"Master Class: Billing Compliance,"** MAGI's Clinical Research Conference, Las Vegas, NV, October 23, 2016.

- **"Research Misconduct: A Year in Review,"** Society of Research Administrators, Annual Meeting, San Antonio, TX, October 26, 2016.

- **"The Journals' Role in Research Misconduct Cases,"** Society of Research Administrators, Annual Meeting, San Antonio, TX, October 25, 2016.

- **"Patient Access to Medications,"** panel discussion, Corporate AACE Partnership (CAP), Boston, MA, October 14, 2016.

44

- **"Standardization of Processes for Handling Research Misconduct,"** National Academy of Sciences Journal Summit, Washington, DC, March 17, 2016.

- **"DMEPOS Update,"** American Health Lawyers Association, Baltimore, MD, March 2016.

- **Patient Access to Medications,"** American Association of Clinical Endocrinologist, Boston, MA, Oct. 14, 2016.

- **"Top Ten Issues for Research Universities,"** moderator, National Association of College and University Attorneys Annual Meeting, Chicago, IL, June 2013.

Local and Regional Presentations

- **"Reimbursement Considerations for Clinical Diagnostic Tests,"** Pennsylvania Life Sciences & Association of University Technology Managers, Philadelphia, PA, October 2018.

- **"Research Misconduct and Clinical Trials"** and **"Research Misconduct and Graduate Students,"** Society for Research Administrators, Minneapolis, MN, April 28 and 29, 2014. • **"Reimbursement with a Global Fair Panel,"** Pennsylvania Bio (BioTech 2010), Philadelphia, PA, October 2010.

- **"Successfully Taking Your Claims Through the Medicare Appeals Process,"** Pennsylvania Bio (BioTech 2010), Philadelphia, PA, October 2010.

- **"Reimbursement for New Medical Technology,"** Carnegie Mellon University, Pittsburgh, PA, April 2010.

## SELECTED ARTICLES

- **"Federal Agencies Can Do More To Ensure Correction of the Literature,"** Accountability in Research, Vo. 25, issue 6, Sept. 2018.

- **"The Physician Payment Sunshine Act,"** Ethical Editor, May 2014.

- **"Research Misconduct in Clinical Trials and Clinical Research,"** Ethical Editor, July 2012.

- **"White Paper on Promoting Integrity in Scientific Journal Publications,"** Council of Science Editors, March 2012.

45

- **"Expressions of Concern and Their Uses,"** by Bridget Noonan and Debra M. Parrish, Learned Publishing, July 2008 Vol. 21, No. 3.

- **"Research Misconduct and Plagiarism,"** by Debra M. Parrish, Journal of College and University Law, January 2007, Vol. 33, No. 1.

- **White Paper on Promoting Integrity in Scientific Journal Publications,"** Council of Science Editors, Editorial Policy Committee (2006).

46

# EXHIBIT C

**Parrish Law Offices**
788 Washington Road
Pittsburgh, PA 15228

# Invoice

| Date |
|------|
| 4/2/2018 |

| Invoice # |
|-----------|
| 5679 |

| Bill To |
|---------|
| Linda Smith |

| | Client/Matter No. | Matter Line 1 |
|---|---|---|
| | | |

| Service ... | Description | Qty | Item | Amount |
|---|---|---|---|---|
| 11/17/2017 | Follow up with Lambert and Council re L. Smith remanded case | 1 | Prof Srvcs @ $525/hr | 525.00 |
| 11/20/2017 | Revision of reconsideration for L. Smith | 0.25 | Prof Srvcs @ $525/hr | 131.25 |
| 12/19/2017 | Postage L. Smith | | Postage | 6.65 |
| 2/8/2018 | Linda Smith appeals | 1.25 | Prof Srvcs @ $525/hr | 656.25 |
| 3/19/2018 | Hearing for Linda Smith with Judge Woodyard | 0.75 | Prof Srvcs @ $525/hr | 393.75 |
| 3/29/2018 | Telephone conference L. Smith; review of ABN and email for her to send to Medtronic; email response to Linda Ostrow | 0.5 | Prof Srvcs @ $525/hr | 262.50 |
| 3/22/2018 | Postage L. Smith | | | 26.80 |

| **Total** | **$2,002.20** |
|---|---|
| **Balance Due** | **$2,002.20** |

**Parrish Law Offices**

788 Washington Road
Pittsburgh, PA 15228

# Invoice

| Date |
|---|
| 6/1/2018 |

| Invoice # |
|---|
| 5740 |

| Bill To |
|---|
| Linda Smith |

| | Client/Matter No. | Matter Line 1 |
|---|---|---|
| | | |

| Service ... | Description | Qty | Item | Amount |
|---|---|---|---|---|
| 4/22/2018 | postage | | | 21.70 |
| 5/15/2018 | Linda Smith emails re supplies | 0.25 | Prof Srvcs @ $525/hr | 131.25 |

| | |
|---|---|
| **Total** | $152.95 |
| **Balance Due** | $152.95 |

**Parrish Law Offices**

788 Washington Road
Pittsburgh, PA 15228

# Invoice

| Date |
| --- |
| 7/2/2018 |

| Invoice # |
| --- |
| 5784 |

| Bill To |
| --- |
| Linda Smith |

| | Client/Matter No. | Matter Line 1 |
| --- | --- | --- |
| | | |

| Service ... | Description | Qty | Item | Amount |
| --- | --- | --- | --- | --- |
| 6/8/2018 | ALJ request and emails re same; telephone conference rc mom in Colorado | 0.75 | Prof srvcs @ $550/hr | 412.50 |
| 6/18/2018 | Emails Linda Smith re appeals | 0.33333 | Prof srvcs @ $550/hr | 183.33 |
| 6/28/2018 | Requested LS participation in Judge Sardinas hearing (18-01); called OMHA about DOS on NOH and s/w Sonia (x2). | 0.16667 | Prof Srvcs @ $350/hr | 58.33 |
| 6/21/2018 | postage | | | 6.70 |

| **Total** | **$660.86** |
| --- | --- |
| **Balance Due** | **$660.86** |

**Parrish Law Offices**
788 Washington Road
Pittsburgh, PA 15228

# Invoice

| Date |
|---|
| 8/1/2018 |

| Invoice # |
|---|
| 5817 |

| Bill To |
|---|
| Linda Smith |

| Client/Matter No. | Matter Line 1 |
|---|---|
|  |  |

| Service ... | Description | Qty | Item | Amount |
|---|---|---|---|---|
| 7/23/2018 | Linda Smith appeals | 0.75 | Prof srvcs @ $515/hr | 386.25 |
| 7/24/2018 | Linda Smith postage |  |  | 6.70 |

| Total | $392.95 |
|---|---|
| **Balance Due** | $392.95 |

**Parrish Law Offices**
788 Washington Road
Pittsburgh, PA 15228

# Invoice

| Date |
|---|
| 9/4/2018 |

| Invoice # |
|---|
| 5837 |

| Bill To |
|---|
| Linda Smith |

| Client/Matter No. | Matter Line 1 |
|---|---|
|  |  |

| Service ... | Description | Qty | Item | Amount |
|---|---|---|---|---|
| 8/20/2018 | Telephone conference and Emails re extension. | 0.25 | Prof srvcs @ $550/hr | 137.50 |

| Total | $137.50 |
|---|---|
| **Balance Due** | $137.50 |

**Parrish Law Offices**
788 Washington Road
Pittsburgh, PA 15228

# Invoice

| Date |
|------|
| 12/3/2018 |

| Invoice # |
|-----------|
| 5930 |

| Bill To |
|---------|
| Linda Smith |

| Client/Matter No. | Matter Line 1 |
|-------------------|---------------|
|                   |               |

| Service ... | Description | Qty | Item | Amount |
|-------------|-------------|-----|------|--------|
| 11/20/2018 | PHB for combined case. | 0.5 | Prof srvcs @ $550/hr | 275.00 |
| 11/21/2018 | attn to settlement agreement | 0.5 | Prof srvcs @ $515/hr | 257.50 |
| 11/23/2018 | Postage (Linda Smith) |  |  | 6.70 |

| | |
|---|---|
| **Total** | $539.20 |
| **Balance Due** | $539.20 |

**Parrish Law Offices**
788 Washington Road
Pittsburgh, PA 15228

# Invoice

| Date |
|---|
| 1/2/2019 |

| Invoice # |
|---|
| 5991 |

| Bill To |
|---|
| Linda Smith |

| Client/Matter No. | Matter Line 1 |
|---|---|
| | |

| Service ... | Description | Qty | Item | Amount |
|---|---|---|---|---|
| 12/11/2018 | hearing with ALJ, prep for same, t/c Linda Smith | 2.4 | Prof srvcs @ $515/hr | 1,236.00 |
| 12/18/2019 | revise/review memo re: CMS1682R and Medtronic devices | 3.6 | Prof srvcs @ $515/hr | 1,854.00 |

| Total | $3,090.00 |
|---|---|
| **Balance Due** | $3,090.00 |

**Parrish Law Offices**

788 Washington Road
Pittsburgh, PA 15228

# Invoice

| Date |
|---|
| 3/1/2019 |

| Invoice # |
|---|
| 6023 |

| Bill To |
|---|
| Linda Smith |

| Client/Matter No. | Matter Line 1 |
|---|---|
|  |  |

| Service ... | Description | Qty | Item | Amount |
|---|---|---|---|---|
| 2/19/2019 | attended hearing with ALJ, t/c Linda Smith re: same, t/c Debbie Parrish re: same | 2.2 | Prof Srvcs @ $525/hr | 1,155.00 |

| | |
|---|---|
| **Total** | $1,155.00 |
| **Balance Due** | $1,155.00 |

**Parrish Law Offices**
788 Washington Road
Pittsburgh, PA 15228

# Invoice

| Date |
|---|
| 4/1/2021 |

| Invoice # |
|---|
| 6668 |

| Bill To |
|---|
| Linda Smith |

| Client/Matter No. | Matter Line 1 |
|---|---|
| | |

| Service ... | Description | Qty | Item | Amount |
|---|---|---|---|---|
| 3/1/2021 | research re complaint | 2.4 | Prof srvcs @ $550/hr | 1,320.00 |
| 3/12/2021 | t/c Phillip Lear re: local counsel, attention to filing complaint | 1.2 | Prof srvcs @ $550/hr | 660.00 |
| 3/20/2021 | revise/review memo re: case status, revise/review complaint documents | 2.4 | Prof srvcs @ $550/hr | 1,320.00 |
| 3/27/2021 | revise/review complaint | 2.6 | Prof srvcs @ $550/hr | 1,430.00 |
| 3/28/2021 | revise/review complaint | 0.6 | Prof srvcs @ $550/hr | 330.00 |
| 3/30/2021 | revise/review memo re: filing | 1.1 | Prof srvcs @ $550/hr | 605.00 |

| **Total** | $5,665.00 |
|---|---|
| **Balance Due** | $5,665.00 |

**Parrish Law Offices**

788 Washington Road
Pittsburgh, PA 15228

# Invoic

| Date |
|------|
| 5/3/2021 |

| Invoice # |
|-----------|
| 6693 |

| Bill To |
|---------|
| Linda Smith |

| Client/Matter No. | Matter Line 1 |
|-------------------|---------------|
|  |  |

| Service ... | Description | Qty | Item | Amount |
|-------------|-------------|-----|------|--------|
| 4/1/2021 | revise/review complaint | 0.8 | Prof srvcs @ $550/hr | 440.00 |
| 4/6/2021 | revise/review summons | 1.1 | Prof srvcs @ $550/hr | 605.00 |
| 4/19/2021 | attn to service | 0.4 | Prof srvcs @ $550/hr | 220.00 |
| 4/26/2021 | attn to service | 0.3 | Prof srvcs @ $550/hr | 165.00 |

| Total | $1,430.00 |
|-------|-----------|
| **Balance Due** | $1,430.00 |

**Parrish Law Offices**

788 Washington Road
Pittsburgh, PA 15228

# Invoice

| Date |
|------|
| 7/1/2021 |

| Invoice # |
|-----------|
| 6752 |

| Bill To |
|---------|
| Linda Smith |

| | Client/Matter No. | Matter Line 1 |
|---|---|---|

| Service ... | Description | Qty | Item | Amount |
|---|---|---|---|---|
| 6/7/2021 | reviewing pleadings, t/c Lear re: same, research re: same | 1.2 | Prof srvcs @ $550/hr | 660.00 |
| 6/8/2021 | revise/review memo re: filing | 0.9 | Prof srvcs @ $550/hr | 495.00 |
| 6/15/2021 | attn to magistrate consent form | 0.9 | Prof srvcs @ $550/hr | 495.00 |
| 6/17/2021 | revise/review memo re: production/schedule | 0.8 | Prof srvcs @ $550/hr | 440.00 |
| 6/18/2021 | revise/review proposed schedule | 2.3 | Prof srvcs @ $550/hr | 1,265.00 |
| 6/21/2021 | attn to proposed schedule | 0.9 | Prof srvcs @ $550/hr | 495.00 |
| 6/22/2021 | revise/review memo re: case status/strategy | 1.4 | Prof srvcs @ $550/hr | 770.00 |
| 6/24/2021 | revise/review response to court order | 2.6 | Prof srvcs @ $550/hr | 1,430.00 |
| 6/28/2021 | reviewing pleadings, research re: same, revise/review memo re: same, reviewing production, revise/review objection | 3.6 | Prof srvcs @ $550/hr | 1,980.00 |

| **Total** | $8,030.00 |
|---|---|

| **Balance Due** | $8,030.00 |
|---|---|

**Parrish Law Offices**

788 Washington Road
Pittsburgh, PA 15228

# Invoice

| Date |
|---|
| 8/2/2021 |

| Invoice # |
|---|
| 6776 |

| Bill To |
|---|
| Linda Smith |

| Client/Matter No. | Matter Line 1 |
|---|---|
| | |

| Service ... | Description | Qty | Item | Amount |
|---|---|---|---|---|
| 7/12/2021 | t/c Linda, revise/review memo re: case status, additional claims | 1.2 | Prof srvcs @ $550/hr | 660.00 |
| 7/22/2021 | revise/review memo re: case status | 0.4 | Prof srvcs @ $550/hr | 220.00 |

| Total | $880.00 |
|---|---|
| **Balance Due** | $880.00 |

**Parrish Law Offices**

788 Washington Road
Pittsburgh, PA 15228

# Invoice

| Date |
|---|
| 9/1/2021 |

| Invoice # |
|---|
| 6784 |

| Bill To |
|---|
| Linda Smith |

| Client/Matter No. | Matter Line 1 |
|---|---|
| | |

| Service ... | Description | Qty | Item | Amount |
|---|---|---|---|---|
| 8/2/2021 | revise/review memo re: additional denials | 0.9 | Prof srvcs @ $550/hr | 495.00 |
| 8/9/2021 | t/c Phillip Lear - prep for hearing | 1.4 | Prof srvcs @ $550/hr | 770.00 |
| 8/10/2021 | prep for and attend case management conference | 2.7 | Prof srvcs @ $550/hr | 1,485.00 |
| 8/11/2021 | attn to appeals, revise/review memo re: same | 0.4 | Prof srvcs @ $550/hr | 220.00 |
| 8/25/2021 | revise/review motion re: answer | 2.7 | Prof srvcs @ $550/hr | 1,485.00 |
| 8/27/2021 | revise/review motion re: answer | 2.6 | Prof srvcs @ $550/hr | 1,430.00 |
| 8/31/2021 | revise/review reply re: answer | 2.1 | Prof srvcs @ $550/hr | 1,155.00 |

| **Total** | $7,040.00 |
|---|---|
| **Balance Due** | $7,040.00 |

**Parrish Law Offices**

788 Washington Road
Pittsburgh, PA 15228

# Invoice

| Date |
|---|
| 10/1/2021 |

| Invoice # |
|---|
| 6825 |

| Bill To |
|---|
| Linda Smith |

| Client/Matter No. | Matter Line 1 |
|---|---|
|  |  |

| Service ... | Description | Qty | Item | Amount |
|---|---|---|---|---|
| 9/1/2021 | revise/review reply re: scheduling | 2.1 | Prof srvcs @ $550/hr | 1,155.00 |
| 9/2/2021 | revise/review reply re: scheduling | 3.4 | Prof srvcs @ $550/hr | 1,870.00 |
| 9/5/2021 | revise/review MSJ re: CMS 1682-R, revise/review MSJ re: collateral estoppel | 3.6 | Prof srvcs @ $550/hr | 1,980.00 |
| 9/6/2021 | revise/review MSJ re: CMS 1682-R, revise/review MSJ re: collateral estoppel | 6.5 | Prof srvcs @ $550/hr | 3,575.00 |
| 9/7/2021 | revise/review MSJ re: CMS 1682-R, revise/review MSJ re: collateral estoppel | 11.4 | Prof srvcs @ $550/hr | 6,270.00 |
| 9/10/2021 | revise/review Rule 11 motion | 2.4 | Prof srvcs @ $550/hr | 1,320.00 |
| 9/13/2021 | revise/review Rule 11 motion | 2.1 | Prof srvcs @ $550/hr | 1,155.00 |
| 9/14/2021 | revise/review Rule 11 motion | 2.3 | Prof srvcs @ $550/hr | 1,265.00 |
| 9/21/2021 | reviewing opposition to motions for summary judgement, research re: same | 1.4 | Prof srvcs @ $550/hr | 770.00 |
| 9/22/2021 | revise/review reply re: summary judgements | 3.7 | Prof srvcs @ $550/hr | 2,035.00 |
| 9/23/2021 | revise/review reply re: summary judgements | 4.1 | Prof srvcs @ $550/hr | 2,255.00 |
| 9/24/2021 | revise/review reply re: summary judgements | 5.2 | Prof srvcs @ $550/hr | 2,860.00 |
| 9/28/2021 | reviewing court orders, revise/review memo re: same, t/c Phil Lear re: same | 1.1 | Prof srvcs @ $550/hr | 605.00 |

| Total | $27,115.00 |
|---|---|
| **Balance Due** | $27,115.00 |

**Parrish Law Offices**

788 Washington Road
Pittsburgh, PA 15228

# Invoice

| Date |
|---|
| 11/1/2021 |

| Invoice # |
|---|
| 6844 |

| Bill To |
|---|
| Linda Smith |

| | Client/Matter No. | Matter Line 1 |
|---|---|---|
| | | |

| Service ... | Description | Qty | Item | Amount |
|---|---|---|---|---|
| 10/3/2021 | revise/review reply re: collateral estoppel/CMS 1682 | 3.7 | Prof srvcs @ $550/hr | 2,035.00 |
| 10/4/2021 | revise/review reply re: collateral estoppel/CMS 1682 | 6.4 | Prof srvcs @ $550/hr | 3,520.00 |
| 10/4/2021 | Revision of papers. | 1.5 | Prof Srvcs @ $575/hr | 862.50 |
| 10/5/2021 | Edits to filing. | 0.75 | Prof Srvcs @ $575/hr | 431.25 |
| 10/5/2021 | revise/review reply re: collateral estoppel/CMS 1682 | 6.1 | Prof srvcs @ $550/hr | 3,355.00 |
| 10/18/2021 | attn to revise/review filing regarding scheduling | 3.4 | Prof srvcs @ $550/hr | 1,870.00 |
| 10/26/2021 | revise/review opposition to cross - motion re: CMS 1682-R | 3.7 | Prof srvcs @ $550/hr | 2,035.00 |

| **Total** | $14,108.75 |
|---|---|
| **Balance Due** | $14,108.75 |

**Parrish Law Offices**

788 Washington Road
Pittsburgh, PA 15228

# Invoice

| Date |
|------|
| 2/1/2022 |

| Invoice # |
|-----------|
| 6920 |

| Bill To |
|---------|
| Linda Smith |

| Client/Matter No. | Matter Line 1 |
|-------------------|---------------|
| | |

| Service ... | Description | Qty | Item | Amount |
|-------------|-------------|-----|------|--------|
| 1/4/2022 | revise/review motion for status, t/c opposing counsel | 1.5 | Prof Srvcs @ $575/hr | 862.50 |
| 1/5/2022 | revise/review motion for status | 1.1 | Prof Srvcs @ $575/hr | 632.50 |
| 1/7/2022 | revise/review memos re: status conference | 0.5 | Prof Srvcs @ $575/hr | 287.50 |
| 1/8/2022 | reviewing opp to motion for status conference | 0.8 | Prof Srvcs @ $575/hr | 460.00 |
| 1/16/2022 | t/c plaintiffs in all cases re: global settlement | 1.5 | Prof Srvcs @ $575/hr | 862.50 |
| 1/18/2022 | conf with plaintiffs in all cases re: settlement | 0.5 | Prof Srvcs @ $575/hr | 287.50 |
| 1/27/2022 | t/c Stanley re: motion to alter/amend, revise/review same | 6.2 | Prof Srvcs @ $575/hr | 3,565.00 |
| 1/28/2022 | revise/review motion to alter/amend | 2.4 | Prof Srvcs @ $575/hr | 1,380.00 |
| 1/31/2022 | revise/review motion to alter/amend, t/c Stanley re: same | 5.4 | Prof Srvcs @ $575/hr | 3,105.00 |

| Total | $11,442.50 |
|-------|-----------|
| **Balance Due** | **$11,442.50** |

**Parrish Law Offices**

788 Washington Road
Pittsburgh, PA 15228

# Invoice

| Date |
|------|
| 3/1/2022 |

| Invoice # |
|-----------|
| 6950 |

| Bill To |
|---------|
| Linda Smith |

| Client/Matter No. | Matter Line 1 |
|-------------------|---------------|
|                   |               |

| Service ... | Description | Qty | Item | Amount |
|-------------|-------------|-----|------|--------|
| 2/3/2022  | attn to ALJ appeal, revise/review motion to alter/amend | 4.6 | Prof Srvcs @ $575/hr | 2,645.00 |
| 2/4/2022  | revise/review motion to alter/amend | 2.4 | Prof Srvcs @ $575/hr | 1,380.00 |
| 2/8/2022  | reviewing denial of motion to alter/amend | 1.1 | Prof Srvcs @ $575/hr | 632.50 |
| 2/21/2022 | attn to notice of appeal | 1.4 | Prof Srvcs @ $575/hr | 805.00 |
| 2/23/2022 | attention to appeal filing | 0.8 | Prof Srvcs @ $575/hr | 460.00 |
| 2/24/2022 | attention to appeal filing | 1.1 | Prof Srvcs @ $575/hr | 632.50 |

| **Total** | $6,555.00 |
|-----------|-----------|
| **Balance Due** | $6,555.00 |



**LEAR & LEAR** LLP
Law Offices

The Downey Mansion
808 East South Temple Street
Salt Lake City, Utah  84102
801-538-5000
Fax: 801-538-5001
www.learlaw.com
Tax ID: 87-0687015

*Please Pay from this Invoice*

|  |  |
|---|---|
|  | Page: 1 |
|  | December 21, 2022 |
| Account No: | 1490-001 |
| **Invoice No:** | 38843 |

Linda Pond Smith
James Pistorino
Parrish Law Office
224 Lexington Drive
Menlo Park CA  94025

v. Xavier Becerra, as Acting Sec. Dept. of Health
Pro Bono plus Expenses

## LEGAL SERVICES RENDERED THROUGH 12/21/2022

|  |  |  | Rate | Hours |  |
|---|---|---|---|---|---|
| 03/26/2021 | PWL | Prepare Motion for Admission Pro Hac Vice and proposed order and transmit to J. Pistorino. | 480.00 | 0.80 | 384.00 |
| 04/01/2021 | PWL | Revise complaint and transmit to J. Pistorino; upload revised Civil Cover Sheet, Motion Pro Hac Vice, and Complaint; telephone conference with J. Pistorino re complaint. | 480.00 | 2.50 | 1,200.00 |
| 04/02/2021 | PWL | Assemble pleadings and transmit Civil Cover Sheet and Complaint to court for case number assignment; telephone conferences with J. Pistorino. | 480.00 | 1.00 | 480.00 |
| 04/05/2021 | PWL | Transmit Civil Cover Sheet and Complaint to court clerk for case number assignment; upload and file Civil Cover Sheet, Complaint, and Motion for Admission Pro Hac Vice; telephone conferences with J. Pistorino re same. | 480.00 | 1.50 | 720.00 |
| 04/06/2021 | PWL | Prepare summonses for Becerra, M. Garland, and A. Martinez and file same; download court-signed summonses and copy of Complaint and Civil Cover Sheet for service upon same; serve process by certified mail. | 480.00 | 1.40 | 672.00 |
| 04/23/2021 | PWL | Track Becerra service of summons and confirm same. | 480.00 | 0.10 | 48.00 |
| 04/26/2021 | PWL | Prepare Motion for Admission Pro Hac Vice and proposed order and transmit to J. Pistorino. | 480.00 | 0.80 | 384.00 |
| 08/09/2021 | PWL | Zoom conference with J. Pistorini in preparation for tomorrow's court hearing. | 480.00 | 0.90 | 432.00 |
| 08/10/2021 | PWL | Zoom court hearing before Judge Pead re motion for order directing filing of Answer and certified admin record. | 480.00 | 0.90 | 432.00 |

Linda Pond Smith
v. Xavier Becerra, as Acting Sec. Dept. of Health

Page: 2
December 21, 2022
Account No: 1490-001
**Invoice No:**      35669

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 08/27/2021 | PWL | Prepare Motion to Amend Scheduling Order and file same and proposed order; telephone and email correspondence with J. Pistorino. | 480.00 | 1.20 | 576.00 |
| 10/05/2021 | PWL | Finalize and file Plaintiff's Reply to Motion for Summary Judgement and to Vacate; finalize and file Plaintiff's Reply to Motion for Summary Judgment on Collateral Estoppel. | 480.00 | 2.20 | 1,056.00 |
| 10/26/2021 | PWL | Prepare Plaintiff's Opposition to Cross-Motion and file same. | 480.00 | 0.60 | 288.00 |
| 01/31/2022 | PWL | Read court rules re requirement, if any, to contact the court prior to seeking a hearing on a motion to amend or alter judgement and report findings to J. Pistorino. | 480.00 | 0.70 | 336.00 |
| 02/04/2022 | PWL | Read and revise Smith's Motion to Alter and Amend Judgment and return to J. Pistorino with comments. | 480.00 | 0.70 | 336.00 |
| 03/04/2022 | PWL | Prepare Unopposed Motion to Expedite Appeal and Entry of Appearance and Designation of Interested Persons, transmit to J. Pistorino for comment; transmit Application of Admission to J. Pistorino. | 480.00 | 1.70 | 816.00 |
| 03/07/2022 | PWL | Telephone conference with J. Pistorino; revise Entry of Appearance and Unopposed Motion to Expedite Appeal and file same; serve opposing counsel via email; forward 10th Circuit order granting motion to J. Pistorino. | 480.00 | 1.30 | 624.00 |
| 03/10/2022 | PWL | Prepare Unopposed Motion to Stay Briefing on Attorneys Fees, proposed order, and docketing statement; file motion and order with Utah District Court; file docketing statement with Tenth Circuit; serve documents via email on opposing counsel; telephone conference with Utah District Court re filing. | 480.00 | 1.70 | 816.00 |
| 03/11/2022 | PWL | Register with Counsel Press for filing paper copies of required filings. | 480.00 | 0.20 | 96.00 |
| 03/14/2022 | PWL | Prepare opening appellate brief; discuss comments with J. Pistorino; prepare and file Unopposed motion to extend date for filing appeal; transmit order granting same to J. Pistorino. | 480.00 | 1.10 | 528.00 |
| 03/15/2022 | PWL | Prepare opening appellate brief and discuss comments with J. Pistornio; upload volumes 1 and 2 of appendix to brief; file opening brief and Appendices I and II; forward court's filing confirmation to J. Pistorino. | 480.00 | 1.30 | 624.00 |
| 03/18/2022 | PWL | File Corrected Appellant's Opening Brief and Appendices Vol. I and II; transmit court filing confirmations to J. Pistorino. | 480.00 | 0.40 | 192.00 |

*Costs may not include everything incurred to 12/21/2022*

Linda Pond Smith
v. Xavier Becerra, as Acting Sec. Dept. of Health

Page: 3
December 21, 2022
Account No: 1490-001
**Invoice No:**   35669

*Total Attorney Services*                        *23.00*   *11,040.00*

**TOTAL LEGAL SERVICES**                          **23.00**   **11,040.00**

### TIMEKEEPER SUMMARY

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Phillip Wm. Lear | 23.00 | $480.00 | $11,040.00 |

### EXPENSES THROUGH 12/21/2022

| | | |
|---|---|---|
| 04/06/2021 | Postage | 24.15 |
| 04/21/2021 | Filing Fee – Federal District Court - Complaint | 402.00 |
| 04/21/2021 | Filing Fee – Federal District Court – Pro Hac Vice Admission Fees | 250.00 |
| | **TOTAL EXPENSES** | 676.15 |

*TOTAL SERVICES AND COSTS THIS INVOICE*                    11,716.15

*Costs may not include everything incurred to 12/21/2022*

# EXHIBIT D

## PROCEEDINGS IN OTHER CASES

A timeline summarizing events/cases may assist the Court:

| Date | District Court and Other Activity | Activity on Mrs. Smith's claims |
|---|---|---|
| April 29, 2016 | H.H.S. Civil Remedies Division holds that the Secretary's position does not pass the "reasonableness standard." *See* DAB No. CR4596 (2016). 2016 WL 2851236 | |
| May 19, 2016 | *Finigan* court calls Secretary's position "head scratching." *Finigan v. Burwell*, 189 F.Supp.3d 201, 2017, n. 6 (D. Mass). | |
| October 26, 2017 | *Whitcomb* court calls Secretary's position "unreasonable", "arbitrary and capricious." *Whitcomb v. Hargan*, Case No. 17-cv-14, Dkt. #19 at 12, 14 (E D. Wisc. Octo. 26, 2017). | |
| January 29, 2018 | *Bloom* court: "no evidence supports the MAC's conclusion that CGM is not 'primarily and customarily used to serve a medical purpose.'" *Bloom v. Azar*, 2018 WL 583111 at *10 (D. Vermont, January 29, 2018) | |
| April 5, 2018 | *Lewis* court: "The Food and Drug Administration, the National Institutes of Health and multiple professional medical societies such as the American Diabetes Association and the American Medical Association deem CGM | |

| | | |
|---|---|---|
| | primarily and customarily to serve a medical purpose as a medical device", "Council's decision that CGM devices are not primarily and customarily used to serve a medical purpose constituted legal error and was not support by substantial evidence." *Lewis v. Azar*, 308 F.Supp.3d 574, 578-9 (D. Mass 2018). | |
| June 12, 2018 | *Whitcomb* court: "no reasonable basis for arguing that continuous glucose monitors are not primarily and customarily used to serve a medical purpose; "demonstrates the unreasonableness of the Secretary's position." Fees awarded. *Whitcomb v. Azar*, Case No. 17-cv-14, Dkt. #34 at 4, 6 (E.D. Wisc. June 12, 2018). | |
| June 15, 2018 | By this date, more than 40 ALJs had rejected the Secretary's position more than 55 times. *See* https://dparrishlaw.com/parrish-law-offices-wins-significatn-victory-for-cgm-users/ | |
| January 16, 2019 | *Bloom* court: "no reasonable person would be satisfied by the Sectary's position that CGMs are not primarily and customarily used to serve a medical purpose."; fees award (precise amount not decided). *Bloom v. Azar*, Case No. 16-cv-121, Dkt. #80 at 10 (D. Vermont Jan. 16, 2019). | |

| | | |
|---|---|---|
| March 30, 2019 | *Lewis* court: "breadth of decisions contrary to the Secretary's position demonstrates a 'string of losses'"; fees awarded. *Lewis v. Azar*, 370 F.Supp.3d 267, 273 (D. Mass. 2019) | |
| April 9, 2019 | | ALJ Mark Win issues two decisions denying Mrs. Smith's claims on the grounds that a CGM is not "primarily and customarily used to serve a medical purpose" as dictated by CMS-1682-R. App.322-31. |
| September 22, 2020 | *Zieroth* court: "the Secretary's interpretation … is not reasonable" *Zieroth v. Azar*, 2020 WL 5642614 at *4 (N.D. Cal. Sep. 22, 2020). | |
| December 3, 2020 | *Zieroth* court: "the Secretary's position both as set forth in CMS-1682-R and reiterated in the course of the instant litigation, was not reasonable."; fees awarded. *Zieroth v. Azar*, 2020 WL 7075629 at *2 (N.D. Cal. Dec. 3, 2020). | |
| February 23, 2021 | *Olsen* court: "No evidence supports the Appeals Council's conclusion that a CGM is not 'primarily and customarily used to serve a medical purpose." *Olsen v. Cochran*, 2021 WL 711469 at *3 (E.D. Wash. Feb. 23, 2021) | |

| | | |
|---|---|---|
| February 26, 2021 | | MAC issues decision denying Mrs. Smith's claims on the grounds that a CGM is not "primarily and customarily used to serve a medical purpose" as dictated by CMS-1682-R. App.313-21. |
| April 20, 2021 | *Olsen* court: "Plaintiff seeks market-value attorney fees under Section 2412(b), arguing that Defendant's position in this case was in bad faith. This Court agrees."; "Defendant's defense was 'groundless.'"; "While Defendant's position was not foreclosed by bunding precedent the Court determines that it was 'so obviously wrong as to be frivolous.'"; "Altogether, Defendant's conduct meets the 'high threshold' for an award of and-faith fees." *Olsen v. Becerra*, 2021 WL 3683360 (E.D. Wash. Apr. 20, 2021). | |
| October 26, 2021 | | Noridian denies Mrs. Smith's request for redetermination of the denial of her claim for coverage of CGM supplies provided on July 14, 2021, based on CMS-1682-R and its contention that a CGM is not "primarily and customarily used to |

| | | |
|---|---|---|
| | | serve a medical purpose." App.287. |
| December 17, 2021 | | The Qualified Independent Contractor (QIC) denied Mrs. Smith's request for reconsideration on the grounds that CMS-1682 barred coverage because a CGM is not "primarily and customarily used to serve a medical purpose", as dictated by CMS-1682-R. App.286-91. |

With regard to the Olsen' Court's "bad faith" finding, Mrs. Smith's research indicates that this is only the eleventh "bad faith" finding against the government in more than a decade out of more than two million cases.