Phillip Wm. Lear
Lear & Lear PLLC
808 E South Temple Street
Salt Lake City, UT 84102
Telephone: (801) 538-5000
Facsimile:(801) 538-5001
Email: phillip.lear@learlaw.com
Local Attorney for Linda P. Smith

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| LINDA P. SMITH,<br><br>    *Plaintiff*<br><br>v.<br><br>XAVIER BECERRA, in his capacity as the Secretary of the United States Department of Health and Human Services,<br><br>    *Defendant* | Case No. 1:21-cv-00047-HCN-DBP<br><br>LINDA SMITH'S REPLY RE: MOTION FOR ATTORNEYS FEES AND EXPENSES PURSUANT TO THE EQUAL ACCES TO JUSTICE ACT<br><br>Judge Howard Nielson, Jr.<br>Magistrate Judge Dustin B. Pead |

Plaintiff Linda Smith files this reply in support of her motion for attorneys fees and expenses. Mrs. Smith's motion should be granted.

As described in Mrs. Smith's motion, the Secretary's underlying position that a CGM is not "primarily and customarily used to serve a medical purpose" has been rejected by every Court to consider it and has already been determined to constitute bad faith (even putting aside its illegal issuance).

In this case, that same bad faith position was used to deny the three claims-in-suit and also used to deny yet another of Mrs. Smith's claims while this suit was pending.

## I.  DISCUSSION

### A.  "Bad Faith" Fees Should Be Awarded

The sole basis on which Mrs. Smith's claims-in-suit were denied, i.e., that a CGM is not "primarily and customarily used to serve a medical purpose" is clearly frivolous/groundless and in bad faith. No person could ever think otherwise and the Secretary's illegal, bad faith assertion of the same is the genesis of this suit.

Moreover, as Mrs. Smith has noted, the bad faith continued after the filing of this suit with the Secretary submitting a frivolous/groundless general denial in bad faith. In addition, the Secretary's assertion that this Court lacked the power to enjoin illegal conduct was also in bad faith.

1

In opposition, the Secretary is silent with regard to his assertion that this Court lacked the power to enjoin illegal conduct. Indeed, it was that bad faith position (adopted by this Court) that led to an appeal before the Tenth Circuit, where (his bad faith purpose having been achieved) the Secretary recanted the bad faith position. In light of the Secretary's non-response, the Secretary has conceded that this position was advanced in bad faith and, therefore, fees may be awarded on that ground alone.

The Secretary's opposition contends that the Secretary "immediately confessed error." Opp. at 9. That is false. Instead, with regard to one of the claims-in-suit, the Secretary confessed error and, with regard to the two other claims, the Secretary requested a remand so the Secretary could cook up new grounds for denial. *See* Dkt. #10. Thereafter, in bad faith, the Secretary repeatedly denied Mrs. Smith's allegations and contended that Mrs. Smith was entitled to "no relief whatsoever." *See* Dkt. #20. In opposition, the Secretary asserts that these sworn statements by an officer of the Court on behalf of the Secretary that forced continued litigation were "inartful." Opp. at 10. Whatever the rationale now offered by the Secretary, the denial was frivolous/groundless and in bad faith.

Moreover, the Secretary asserts that: "There was no bad faith in the issuance of CMS 1682-R." Opp. at 10. Again, this is simple bad faith. No person could ever contend that a CGM is not "primarily and customarily used to serve a medical purpose." The misconduct in this regard was compounded by the fact that: 1) the

2

policy issued illegally; 2) a "medical doctor" in the Department signed his name to it; and 3) the ALJs and the MAC betrayed their oaths to assert the bad faith position.

The Secretary contention that the bad faith, illegal policy that formed the basis for the rejections in this case and, therefore, this suit in the first place does not fall within the bad faith fees provision is erroneous. Opp. at 10. In *Towerridge*, the Tenth Circuit conducted a careful review of the Supreme Court's decision in *Vaughn v. Atkinson*, 369 U.S. 527 (1962) and identified several forms of bad faith conduct, some of which fall within the exception to the American Rule. 111 F.3d at 768. As stated: "Where a party … necessitates an action to be filed or defends an action through a colorless defense, that constitutes bad faith which is grounds for an award of attorney's fees." *Id*. That is exactly the case here. The Secretary necessitated this action be filed through his colorless assertion of the illegal and adjudicated bad faith CMS-1682-R and, in this litigation, asserted a colorless defense.

As described, the bad faith, illegal policy issued and took effect in a single day (January 12, 2017). In an effort to ameliorate his deadly, bad faith conduct, the Secretary asserts that, starting in 2020, the Secretary began a "project" to reconsider his bad faith, illegal position. Opp. at 9. For more than a year, the Secretary alleges he was thinking about his bad faith, illegal position. As posited by the Secretary, in an amazing coincidence, that "project" reached a decision point only after Mr. Olsen filed his second suit and it was assigned to the same "bad faith" judge. Similarly,

3

the "project" completed only four days before oral argument at the Tenth Circuit in this case. Again, this is simple bad faith.

The Secretary's citations to *Whitcomb v. Burwell*, 2015 WL 5254518 (E.D. Wisc. Sept. 9, 2015) and *Lewis v. H.H.S.*, 370 F.Supp.3d 267 (D. Mass. 2019) and (Opp. at 10) are well off the mark. As an initial matter, both those cases were decided based on the pre-CMS 1682-R policy and rejected the claims on the fabricated basis that a CGM was "precautionary." That is, the *Whitcomb* decision issued even before CMS 1682-R was released (on January 12, 2017) and the *Lewis*' claims dated from 2013. *Lewis*, 370 F.Supp.3d at 271. Moreover, the *Lewis* decision noted that, even in 2019, the Secretary had been "put on notice that his position [of non-coverage] is tenuous at best." *Id*. As noted in the *Olsen* decision, by the time this case was filed, several years had passed, multiple courts had ruled against the Secretary, and the Secretary "has continued to assert [his] untenable position, wasting judicial and party resources." *Olsen v. Becerra*, 2021 WL 3683360 at * 2 (E.D. Wash. Apr. 20, 2021). Thus, whatever extreme bias in favor of the Secretary existed prior to 2019, it had (or should have) run out by the time this suit was filed.

The Secretary's position both below and in this case was asserted in bad faith and bad faith attorney's fees should be awarded.

**B.     Lack of "Substantial Justification" Fees**

4

With regard to fees under 28 U.S.C. § 2412(d), the Secretary does not dispute any of the elements other than the amount of fees requested. That is, the Secretary concedes that he lacked "substantial justification" in both the denials below and the in litigating this matter. That is an amazing concession by a government and attorneys ostensibly sworn to uphold the rule of law.

1.    **Hourly Rate**

In her opening papers, for ease of calculation, Smith used the CPI-U for the Western Region from May 2022, around the time that primary litigation before this Court ended and the appellate litigation began.

The Secretary disputes that the May 2022 CPI-U should apply and, instead, prefers a CPI-U from 2021. As a base matter, a fee request should not result in a second major litigation. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation."). The level of specificity the Secretary seeks would require calculation of the CPI-U for every month of every billing entry. Indeed, given that this Reply is filed in May 2023, the billing rate for this Reply would have to be calculated using the CPI-U for the Western Region in April 2023 (332.187) divided by the CPI-U for March 1996 (156.4) which results in multiplier of 2.12 and, therefore, a billing rate of $265. The rate for Smith's opening papers would be different, etc. Smith's proposed billing

rate of $247.5/hour simplifies the calculations and is consistent with the command of *Eckerhart*.

The Secretary disputes that "exceptional success" fees are even available under § 2412 and that Smith had "exceptional success." Opp. at 5. The Secretary's first objection is quickly dispatched by the text of *Henselyt* itself. *Id*. at 433, n. 7 ("The standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'").

As to whether Smith had "exceptional success", as explained by the Supreme Court in *Hensley*, 461 at 433, "The result is what matters" and a fee award should not be reduced just because a party failed to prevail on every contention.

In the present case, at appellate oral argument, Smith summed up CMS-1738-R, issued four days before oral argument, as admitting everything Smith had sought by way of admission and recission of CMS-1682-R. In response, Judge Carson stated: "Yeah, congratulations." Transcript at 5-6. Likewise, the Tenth Circuit's issued decision states:

> Regardless, the Final Rule and CMS-1738-R address Smith's concerns and grant Smith the full relief she seeks. The Final Rule recognizes that CGMs – irrespective of whether the complement a blood glucose test – are "primarily and customarily used to serve a medical purpose" and therefore meet the definition of durable medical equipment. Similarly, CMS-1738-R adopts the Final Rule and expressly rescinds CMS-1682-R.

(cleaned-up). *Smith v. Becerra*, 44 F.4th 1238, 1250 (10th Cir. 2022). Thus, rather

6

than "relatively narrowl" (Opp. at 7), Smith obtained the very things Smith sought, both for herself and for tens of thousands of others. Prayer for Relief, Para. 1-2; App.35. Moreover, all the Causes of Action in this case were based on the same facts and were all related as was the Request for Relief. Each of the Causes of Action and Prayers for Relief were different ways to obtain coverage of Smith's claims with varying degrees of breadth and certainty. *Hensley*, 461 U.S. at 435 ("common core of facts" – "court should focus on the significance of the overall relief obtained by the plaintiff").

"The result is what matters" (*Hensley*) and in this case, the result is that Smith obtained coverage for her three claims, rescission of CMS-1682-R, a declaration that CGMs are "durable medical equipment" within 42 U.S.C. § 1395(x), and retroactive coverage of CGM claims with dates of service before March 1, 2022 (such as her July 1, 2021, claim).

Moreover, Smith obtained this not only for herself. She obtained this for tens of thousands of others. This is "exceptional success" warranting an "enhanced award." *Id*. However, rather than an "enhanced award", Plaintiff merely seeks her market rate fees incurred in obtaining these results (reduced by 10% for billing judgment).

The Secretary's assertion that Smith "unreasonably protracted" the litigation is itself frivolous and an instance of bad faith. This is particularly so when Smith's

post-filing claims were being rejected on the basis of CMS 1682-R and the Tenth Circuit held that this Court should not have dismissed Smith's requests for relief and that this case was not moot until CMS-1738-R issued four days before appellate oral argument.

### 2.   Eligible/Reasonable Hours

Respectfully, the Secretary's attempt to reduce the fees in this case to $3,321 is not serious.  As explained by the Supreme Court in Hensley:

> Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what matters.

*Id*. at 435.  Thus, the Secretary's assertion that the fees should be reduced because this Court refused to address the illegal issuance of CMS 1682-R, e.g., simply has no basis.

Moreover, Smith notes the circular nature of the Secretary's assertions.  First, in bad faith, the Secretary asserted that this Court is powerless to stop plainly illegal, deadly conduct by the Secretary.  This Court adopted that frivolous position.  When the Secretary later recants on appeal, the Secretary asserts that because this Court adopted the frivolous position, Smith is not entitled to fees for resisting it.

The Secretary's claims regarding individual time entries are not worthy of individual response.  This Court's task is to determine whether the 187.25 hours billed was reasonable given the results.  Nevertheless, Smith notes the Secretary's

apparent 90% across the board reduction in time expended (including in reviewing the multiple "answers") is not serious.

### C. Updated Fee Calculations

Under EAJA, a prevailing party may obtain compensation for all aspects of the litigation, including fees incurred in litigating the fee petition. *See, e.g., I.N.S., v. Jean*, 496 U.S. 154, 162, 163 n.10 (1990). Accordingly, Plaintiff submits a revised billing statement to reflect fees incurred in the fee briefing.

Fees incurred in preparing the fees briefing amounted to 12.75 hours (8.75 hours preparing the opening brief and 4.00 hours preparing this reply) at $625/hour for a total of $7,968. Applying a 10% billing judgment factor results in a fee of $7,171.

Applying this to the figures previously presented results in a fee of $92,121 based on market rates. Applying a COLA based on the May 2022 CPI-U rate of $247.5 multiplied by total hours of 187.25 gives a fee total of $46,344.

### D. Costs

Respectfully, the Secretary's dispute about costs is centered on the misapprehension that the costs sought are appellate filing fees. That is incorrect. The costs sought are the filing fees for this case ($402).

## II.    CONCLUSION

For the reasons set forth above, Smith should be awarded her market rate attorneys fees of $92,121 plus costs of $402 because the Secretary engaged in bad faith.

Dated:  May 12, 2023                          Respectfully submitted,

PARRISH LAW OFFICES

*/s/  James C. Pistorino*
James C. Pistorino
*Attorneys for Plaintiffs*

LEAR & LEAR PLLC

*/s/ Phillip Wm. Lear*
Phillip Wm. Lear
*Attorneys for Plaintiff*